STATE OF NORTH CAROLINA v. DOUGLAS EARL COLLINS

No. COA02-415

(Filed 16 September 2003)

## 1. Search and Seizure— warrantless search of vehicle—motion to suppress drugs—informant tip

The trial court did not err in a trafficking in cocaine case by denying defendant's motion to suppress the drugs obtained by the police when they conducted a warrantless search of defendant's vehicle based on an informant's tip, because: (1) the police were able to verify that defendant was the alleged perpetrator and establish probable cause to justify the warrantless stop and search of defendant's vehicle based on the informant's description of the vehicle, description of defendant, and provision of the location and approximate time of the alleged activity; (2) the informant was a reliable informant and his information was reasonably corroborated by other matters within the officer's knowledge; and (3) the informant gave the police sufficient information to establish probable cause for the eventual warrantless arrest of defendant.

STATE v. COLLINS

[160 N.C. App. 310 (2003)]

### 2. Criminal Law— motion for continuance—locating police informant

The trial court did not err in a trafficking in cocaine case by denying defendant's motions for a continuance to locate and subpoena the police informant at trial, because: (1) the evidence does not fully establish that defendant made any real effort to identify or locate the informant during the nine months between defendant's arrest and trial; and (2) the evidence shows the informant should have been easily identified or located by defendant considering that defendant knew the informant to be a well-known drug dealer in his father's community, defendant returned several of the informant's pages on the night of defendant's arrest, and defendant went to the informant's house after meeting him at a store.

### 3. Constituional Law— pretrial motion—identity of confidential informant

The trial court did not err in a trafficking in cocaine case by denying defendant's pretrial motion to reveal the identity of the confidential informant when that motion was made, because: (1) a defendant who requests that the identity of a confidential informant be revealed must make a sufficient showing that the particular circumstances of his case mandate such disclosure; (2) defendant's guilt was established through other evidence and not by the informant, especially considering that the informant did not testify at trial; and (3) when the informant was identified at the end of the trial, defendant was not surprised since he had essentially stated in his motion to suppress that he believed that the individual was one of two likely candidates to have been an agent of the state.

### 4. Criminal Law— entrapment—matter of law

The trial court did not err in a trafficking in cocaine case by failing to find that defendant was entrapped as a matter of law because when viewed in its entirety, the evidence does not demonstrate inducement as a matter of law, but rather a predisposition and opportunity to commit the offense in question.

Judge McGEE concurring in part and dissenting in part.

Appeal by defendant from judgment entered 19 July 2001 by Judge L. Oliver Noble in Mecklenburg County Superior Court. Heard in the Court of Appeals 23 January 2003.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General R. Marcus Lodge, for the State.*

*James M. Bell for defendant-appellant.*

HUNTER, Judge.

Douglas Earl Collins ("defendant") appeals his conviction for trafficking in cocaine. For the reasons stated herein, we hold there was no error.

The State's evidence at trial tended to show the following: Officer C. A. Kimball ("Officer Kimball"), of the Charlotte-Mecklenburg Police Department, arrested Calvin Cunningham ("Cunningham") for drug offenses on 6 October 2000. While in custody, Cunningham was informed by Officer Kimball that Cunningham could help his case by assisting the police catch other individuals involved in illegal drug activities. Consequently, Cunningham provided Officer Kimball with detailed information regarding seven drug houses and drug markets in Charlotte; information the officer was able to corroborate.

Thereafter, Cunningham proceeded to make various telephone calls from a police cell phone over a one-hour period in an effort to create drug activity. Following these calls, Cunningham informed Officer Kimball that he had scheduled a meeting at the Fast Fare on the corner of Eastway and The Plaza with a black man, in his thirties, named "Doug" who would be driving a late 1980's model, white, four-door Cadillac Brougham with spoke or wire hubcaps. Cunningham also told Officer Kimball that the man would have a large amount of cocaine in the Cadillac and the approximate time the vehicle would arrive at the Fast Fare. Although Officer Kimball had no prior experience with Cunningham as an informant, he was familiar with Cunningham from an arrest several months earlier.

Based on Cunningham's information, the police set up surveillance of the Fast Fare. As Cunningham stood by a phone at the Fast Fare, a black male, later identified as defendant, drove up in a white, four-door Cadillac. Cunningham got in defendant's Cadillac, and defendant drove to a house several blocks away. Cunningham entered the house alone, came back out, and told defendant to drive around the corner. As defendant drove away, he was stopped by the police. Officer Kimball and another officer immediately conducted a search of defendant's vehicle and found two baggies of cocaine under the driver's seat totaling approximately fifty-five grams in weight.

Defendant was arrested and taken to a law enforcement center where, after waiving his *Miranda* rights, he gave a statement to the police.

Defendant told police in his statement and later testified at trial that, although he was employed, he needed extra money. Defendant said he only knew the first names of two known drug dealers in his father's community, "Kevin" (later identified as Calvin Cunningham) and "Otis." Prior to 6 October 2000, defendant said he had asked Cunningham for money and had also given Cunningham his pager number in case Cunningham had some work for him. Defendant testified that he was only interested in doing non-drug-related work such as cutting grass. Shortly thereafter, Cunningham paged defendant and offered to pay him to deliver a "package," but at that time defendant told Cunningham he did not want to be involved in any drug-related activities.

Defendant also testified that on the night of 6 October 2000, Cunningham paged him four or five times. When defendant returned the pages, Cunningham urged him to deliver a package if he wanted to make extra money. Defendant then spoke with Otis who told him that Cunningham had called and expressed defendant's desire to make some money. Otis offered defendant fifty dollars to deliver a Crown Royal bag to Cunningham and collect $2,000.00 from Cunningham. Defendant testified that after Otis assured him that the bag contained "powder" and not "crack," Otis put the bag under a seat of the Cadillac. Defendant then drove to the Fast Fare to meet Cunningham.

After defendant picked up Cunningham, Cunningham put the Crown Royal bag in his pants and asked defendant to drive to Cunningham's house so that he could get the money for defendant. Defendant testified that Cunningham told him to drive around the corner while he was in the house. When defendant drove away, he was stopped and arrested. Defendant testified that he did not know that there were two baggies of cocaine in his Cadillac when the police stopped him. Defendant thought the cocaine was in the Crown Royal bag that Cunningham had put in his pants.

On 27 November 2000, defendant filed a motion to suppress based on a lack of probable cause to stop and search defendant's vehicle. An affidavit in support of the motion was filed on 8 December 2000. Defendant alleged in the motion and affidavit that he believed "Otis or [Cunningham was an] agent of the state that entrapped him

in this criminal enterprise, with the sole purpose of setting him up for arrest." The trial court ultimately denied defendant's motion. In a second motion, defendant sought to compel the identity of the confidential informant. The trial court also denied that motion, concluding that the State only had to provide defendant with anything it knew that would help defendant learn the whereabouts and last names of "Kevin" (Cunningham) and "Otis." Thus, the State told defendant Cunningham's full name and last known address. The State had no information about "Otis."

Prior to trial, defendant twice moved for a continuance in order to subpoena Cunningham for trial. The court denied defendant's motion on both occasions, stating that since defendant's arrest, there had been ample time for him to "find out what the last name of the local dope dealer was[.]" Nevertheless, the State was ordered to pay for a private investigator to serve a subpoena on Cunningham. The investigator's attempts were unsuccessful.

At the close of the evidence, defendant was permitted to recall Officer Kimball to determine the identity of the State's confidential informant. Defendant learned Cunningham was the informant; however, Officer Kimball reiterated that the police were unable to locate "Otis."

The trial court instructed the jury on the defense of entrapment. That defense was rejected, and the jury convicted defendant of trafficking in cocaine. Defendant was sentenced to a term of thirty-five months to forty-two months imprisonment. Defendant appeals.

I.

[1] Defendant first argues the trial court erred in denying his motion to suppress the drugs obtained by the police when they conducted a warrantless search of his vehicle because Cunningham's informative tips were insufficient to establish probable cause. We disagree.

A warrantless search may be conducted incident to a lawful arrest if probable cause to arrest exists prior to the search and the arrest is permitted by law. *State v. Mills*, 104 N.C. App. 724, 728, 411 S.E.2d 193, 195 (1991). " 'Probable cause exists where "the facts and circumstances within their [the officers'] knowledge, and of which they had reasonable trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.' " *Id.* (citations omitted). Specifically in the case of an informant's tip, probable cause is deter-

mined by a " ' " 'totality-of-the circumstances' " ' " test, using a " ' " 'balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip.[']" ' " *State v. Chadwick*, 149 N.C. App. 200, 203, 560 S.E.2d 207, 209, *disc. review denied*, 355 N.C. 752, 565 S.E.2d 672 (2002) (citations omitted). The indicia of reliability may include (1) whether the informant was known or anonymous, (2) the informant's history of reliability, and (3) whether information provided by the informant could be and was independently corroborated by the police. *Id.*; *State v. Earhart*, 134 N.C. App. 130, 133-34, 516 S.E.2d 883, 886 (1999). An informant's tip is more reliable if it contains " 'a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted.' " *Alabama v. White*, 496 U.S. 325, 332, 110 L. Ed. 2d 301, 310 (1990) (citation omitted).

There are several prior cases of this Court that are instructive as to determining the measure of probable cause based on an informant's tip. In one such case, *State v. Martinez*, 150 N.C. App. 364, 562 S.E.2d 914, *appeal dismissed and disc. review denied*, 356 N.C. 172, 568 S.E.2d 859 (2002), Daniel Goff ("Goff") was arrested for possession of drugs and contraband. In an effort to gain a plea bargain, Goff told the arresting officer that he normally purchased marijuana from two Hispanic males. He stated that the two males were en route to his home in a white four-door automobile to deliver marijuana " 'right to [his] door.' " *Id.* at 367, 562 S.E.2d at 916. Goff had not previously served as an informant. Acting on this information, the officers established surveillance in the immediate area. While the officers were waiting, the two men called Goff on his cellular phone and stated that they would be arriving in twenty minutes. Approximately twenty minutes later, a white four-door Neon, occupied by Mario Martinez ("Martinez") and another Hispanic male, parked next to Goff's front door. The officers arrested both men and searched the vehicle.

On appeal, Martinez argued the police did not have probable cause to support the warrantless arrest and search. This Court recognized that " '[o]nce [officers] corroborate[] the description of the defendant and his presence at the named location, [they] ha[ve] reasonable grounds to believe a felony [i]s being committed in [their] presence which in turn create[s] probable cause to arrest and search defendant.' " *Id.* at 369, 562 S.E.2d at 917 (citation omitted). Therefore, we concluded that once the officers corroborated (1) the description of the vehicle, (2) the description of the occupants, (3)

STATE v. COLLINS

[160 N.C. App. 310 (2003)]

the location of the activity, including the proximity of the automobile's position to the front door, and (4) the arrival time of the automobile, there was probable cause to justify the warrantless search. *Id.*

*Martinez* is analogous to the present case. Here, Cunningham described the vehicle as a late 1980's model, white, four-door Cadillac Broughham with spoke or wire hubcaps. Cunningham described defendant as a black man, in his thirties, named "Doug." Both of these descriptions were more detailed than the descriptions given by the informant in *Martinez*. Also, like the informant in *Martinez*, Cunningham provided the location and approximate time of the alleged activity. From all this information, the police were able to verify that defendant was the alleged perpetrator and establish probable cause to justify the warrantless stop and search of his vehicle.

Additionally, *Chadwick*, 149 N.C. App. 200, 560 S.E.2d 207, and *Earhart*, 134 N.C. App. 130, 516 S.E.2d 883, are instructive in addressing defendant's first argument. The informant in *Chadwick*, who had a history of reliability, told police that the

> defendant was about to (1) deliver a large amount of cocaine to a specific location, (2) be driven by a black female in an older model four-door black Nissan Sentra, because defendant did not have a driver's license, (3) be taken to a Texaco station at the corner of Highway 17 North and Piney Green Road, (4) be traveling from a certain direction, (5) park next to a telephone booth in the parking lot, (6) act like he was there to use the telephone, and (7) conduct a drug transaction there.

*Chadwick*, 149 N.C. App. at 203-04, 560 S.E.2d at 210. Our Court noted that the police verified every detail of the informant's tip "with minute particularity." *Id.* at 204, 560 S.E.2d at 210. Furthermore, a police officer testified that he recognized the defendant as soon as the vehicle drove up. *Id.* Thus, the warrantless search was upheld.

In *Earhart*, the sheriff's department received two tips concerning the defendant. The first informant, an anonymous male, called the sheriff's department and stated that

> a white Trans Am would be traveling to a residence on North Spot Road in Powell's Point sometime between 27 April and 28 April and that it might be accompanied by a blue Subaru. The caller stated that the white Trans Am would be transporting approxi-

mately a pound of marijuana. The caller did not identify himself and Deputy Davidson did not recognize the voice.

*Earhart*, 134 N.C. App. at 131, 516 S.E.2d at 885. The second tip, given by a police officer based on information he had received from an SBI agent, provided that

> a person whose name sounded like "Airhart" was selling co-caine and marijuana from his home on North Spot Road and that he drove a white Trans Am, a blue Chevrolet Cavalier, and a rust Jeep. [The agent] also told him that the SBI had received this information from an individual who had been in-side Earhart's residence.

*Id.* at 132, 516 S.E.2d at 885. Based upon the tips, law enforcement set up surveillance of the address. A license check revealed that the name of the driver of the Trans Am was Earhart, a man known to carry weapons. While on surveillance, law enforcement observed a blue Subaru pull up to the house. When the sheriff's deputy questioned the driver, she stated that she was visiting her sister and her boyfriend, Earhart, who drove a white Trans Am. Thereafter, Earhart passed by the law enforcement surveillance in a white Trans Am and was pulled over. The officers subsequently searched Earhart's car and found fifty grams of cocaine, marijuana, and a handgun. *Id.* at 132-33, 516 S.E.2d at 885-86. This Court found the informant's tips were sufficient to allow a warrantless stop, stating that

> in addition to the informant's tip . . . , the officers involved were able to use separate information obtained from the SBI and from an independent investigation to corroborate the information received. This included the type of vehicle driven by the defend-ant, the name of the defendant, and information that the defend-ant was known to sell drugs including marijuana and cocaine. . . . The officers were able to independently verify all of the anony-mous informant's tip except for the presence of drugs in the vehi-cle prior to the vehicle stop. Based on all this information, the officers had reasonable grounds to believe the tip was accurate and reliable and that drugs were in the vehicle.

*Id.* at 134, 516 S.E.2d at 886-87.

The present case can also be analogized to *Chadwick* and *Earhart*. Like the informants in those cases, Cunningham was a reli-able informant. Prior to giving information about defendant, Cunningham had provided Officer Kimball with specific information

about seven different drug locations in Charlotte, the names of several drug dealers, the names of their suppliers, their methods of operation, and even the location of their drug stashes. Officer Kimball testified that based on his experience and knowledge of particular drug areas, he knew the information Cunningham provided was correct thereby allowing him to rely on the information Cunningham gave him regarding defendant. *See State v. Bone*, 354 N.C. 1, 10, 550 S.E.2d 482, 488 (2001) (citation omitted), *cert. denied*, 535 U.S. 940, 152 L. Ed. 2d 231 (2002) (holding that an officer may rely upon information received through an informant " 'so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge' ").

Moreover, similar to the informants in *Earhart* and *Chadwick*, Cunningham gave the police sufficient information to establish probable cause for the eventual warrantless arrest of defendant. To establish probable cause, the police need not verify the defendant's identity with someone other than the informant prior to making the arrest as long as the informant provides sufficient details of the defendant's appearance in order for the police to recognize the defendant. *See State v. Trapp*, 110 N.C. App. 584, 430 S.E.2d 484 (1993). In *Earhart*, the only identifying information the officers received about the defendant was that he drove a white Trans Am and his name sounded like " 'Airhart.' " *Earhart*, 134 N.C. App. at 132, 516 S.E.2d at 885. Similarly, in *Chadwick*, the only identifying information the informant provided was that the defendant was known as " 'Breeze.' " *Chadwick*, 149 N.C. App. at 201, 560 S.E.2d at 208. Here, Cunningham described defendant as a black male in his thirties named "Doug." Cunningham further provided details regarding the make and model of defendant's vehicle and the approximate time defendant would arrive at the Fast Fare. Thus, the information Cunningham provided about the physical description of defendant, coupled with additional detailed information, was sufficient to establish probable cause.

Accordingly, under the totality of the circumstances, the evidence was sufficient to justify the warrantless search of defendant's vehicle and his subsequent arrest.

## II.

[2] Next, defendant argues the trial court erred in denying his motions for a continuance to locate and subpoena Cunningham for trial. We disagree.

"It is well settled that a motion for continuance is addressed to the discretion of the trial judge and we will not disturb that ruling absent an abuse of that discretion." *State v. Wilfong*, 101 N.C. App. 221, 223, 398 S.E.2d 668, 670 (1990). However, defendant contends that his motions were based on his state and federal Constitutional rights to confront the evidence against him. "When a defendant's motion to continue ' " 'is based on a right guaranteed by the Federal and State Constitutions, the question presented is one of law and not of discretion, and the decision of the court below is reviewable.' " ' " *Id.* (citations omitted). On review, this Court looks for detailed proof that fully establishes the reasons for the delay as well as a showing of whether the party requesting the continuance would be materially prejudiced if the motion was denied. *State v. Cody*, 135 N.C. App. 722, 726, 522 S.E.2d 777, 780 (1999).

The evidence in the case *sub judice* does not fully establish that defendant made any real effort to identify or locate Cunningham during the nine months between his arrest and trial. On the contrary, the evidence shows that Cunningham should have been easily identified or located by defendant considering defendant (1) knew Cunningham to be a well-known drug dealer in his father's community; (2) returned several of Cunningham's pages on the night of his arrest; and (3) went to Cunningham's house after meeting him at the Fast Fare. Therefore, we hold that it was not error for the trial court to deny defendant's motions for a continuance.

### III.

[3] Defendant also argues the trial court erred by denying defendant's pretrial motion to reveal the identity of the confidential informant when that motion was made. We disagree.

Generally, the State may withhold the identity of a confidential informant subject to certain exceptions. *See State v. Newkirk*, 73 N.C. App. 83, 85, 325 S.E.2d 518, 520 (1985). "[A] defendant who requests that the identity of a confidential informant be revealed must make a sufficient showing that the particular circumstances of his case mandate such disclosure." *State v. Watson*, 303 N.C. 533, 537, 279 S.E.2d 580, 582 (1981). Here, defendant's guilt was established through other evidence and not by Cunningham, especially considering he did not testify at trial. Morever, when Cunningham was identified as the confidential informant at the end of the trial, defendant was not surprised by this revelation since he had essentially stated in his motion to suppress (filed approximately seven months earlier) that he believed

Cunningham was one of two likely candidates to have been an "agent of the state[.]" Therefore, the trial court did not err in denying defendant's pretrial motion to compel the State to reveal the informant's identity.

IV.

**[4]** Finally, defendant argues the trial court erred by failing to find that he was entrapped as a matter of law. We disagree.

> Entrapment is a defense to conviction of a crime when

> there are acts of persuasion, trickery or fraud carried out by law enforcement officers or their agents to induce a defendant to commit a crime and when the origin of the criminal intent lies with the law enforcement agencies. We note that this is a two step test and a showing of trickery, fraud or deception by law enforcement officers alone will not support a claim of entrapment. The defendant must show that the trickery, fraud or deception was *"practiced upon one who entertained no prior criminal intent."* Entrapment may occur through action of law enforcement officers *or their agents.*

*State v. Hageman*, 307 N.C. 1, 28, 296 S.E.2d 433, 449 (1982) (citations omitted) (emphasis in original). "The defense is *not* available *to a* defendant who was predisposed to commit the crime charged absent the inducement of law enforcement officials [or their agents]." *State v. Worthington*, 84 N.C. App. 150, 157, 352 S.E.2d 695, 700 (1987) (citation omitted).

The issue of whether or not a defendant was entrapped is generally a question of fact to be resolved by the jury. *Id.* In the present case, the trial court instructed the jury on the defense of entrapment, which defense the jury rejected. However, defendant argues that the court should have taken the issue from the jury and found defendant was entrapped as a matter of law. Such a decision by a trial court is appropriate "[o]nly when 'the undisputed evidence discloses that an accused was induced to engage in criminal conduct that he was not predisposed to commit[.]' " *Id.* (quoting *Hageman*, 307 N.C. at 30, 296 S.E.2d at 450). Factors indicating a predisposition to engage in the criminal conduct include "the defendant's ready compliance, acquiescence in, or willingness to cooperate in the proposed criminal plan." *Id.*

The evidence in the record indicates that the informant, Cunningham, was working for the police at the time he called defend-

ant on 6 October 2000. While Cunningham's calls could arguably be perceived as acts of persuasion to induce defendant to transport, "[l]aw enforcement 'may rightfully furnish to the players of [the drug] trade *opportunity* to commit the crime in order that they may be apprehended. It is only when a person is *induced* by the officer to commit a crime which he did not contemplate that we must draw the line.' " *State v. Broome*, 136 N.C. App. 82, 89, 523 S.E.2d 448, 454 (1999) (quoting *State v. Stanley*, 288 N.C. 19, 33, 215 S.E.2d 589, 598 (1975)) (emphasis in original).

With that in mind, a further review of the evidence shows defendant initially gave Cunningham, a known drug dealer, his pager number in case he needed defendant to do some work. On one occasion prior to 6 October 2000, defendant refused to deliver a "package" for Cunningham because he did not want to be involved in drug-related activities. Yet, when defendant returned Cunningham's pages on 6 October 2000, the two men once again discussed defendant delivering a package to make money. Later that evening, defendant spoke with another known drug dealer, Otis, and agreed to make a delivery and pick up $2,000.00 from Cunningham, in exchange for fifty dollars. During the trial, defendant testified:

> I knew that I made a bad decision because I asked him, I said, "What's in this bag?" It was [a] Crown Royal bag. He said, "Don't worry about it. It ain't crack. It's powder." And I was like, man— I said, "You can get in trouble doing that." He promised me that I would get in no trouble. He said, "I promise you that." So, when I left, I went to the place and picked up [Cunningham] and we went to [Cunningham's] house, and I said, "[Cunningham], you know, you got the bag . . ."—He put it in his crotch and he got out and went in the house. . . . So, at this time I thought that he had took the drugs and went in the house with it . . . .

This testimony clearly indicates that defendant knew the "powder" he was delivering to Cunningham was an illegal substance. When viewed in its entirety, the evidence does not demonstrate inducement as a matter of law, but rather a predisposition and opportunity to commit the offense in question. *See Hageman*, 307 N.C. at 31, 296 S.E.2d at 450. Therefore, the trial court properly submitted the issue of entrapment to the jury.

In conclusion, the trial court did not err in its judgment against defendant for trafficking in cocaine.

No error.

Judge CALABRIA concurs.

Judge McGEE concurs in part and dissents in part in a separate opinion.

McGEE, Judge, concurring in part and dissenting in part.

I concur in the majority's conclusion that defendant was not entrapped as a matter of law. However, I respectfully dissent from the majority's conclusion that there was probable cause to conduct the warrantless stop and search of defendant's vehicle based on an informant's tip. As correctly stated by the majority, in the case of an informant's tip, probable cause is determined by a " 'totality-of-the circumstances' " test, using a " 'balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip.'" *State v. Chadwick*, 149 N.C. App. 200, 203, 560 S.E.2d 207, 209, *disc. review denied*, 355 N.C. 752, 565 S.E.2d 672 (2002) (citations omitted). A court must review the facts and circumstances of each case to determine whether, under the totality of the circumstances, there was probable cause to make a warrantless stop and search. *Id.* In the present case, under the totality of the circumstances, probable cause did not exist.

In the present case, I take a different view of some of the facts as well as the cases the majority cites in support of its holding. I believe the present case can be distinguished from both *Chadwick* and *State v. Earhart*, 134 N.C. App. 130, 516 S.E.2d 883 (1999). The informant in the present case was certainly known to the police and was, in fact, in their custody. However, the informant was known to the police as a criminal defendant, not as an informant, since he had no track record of providing information to the police, and therefore no history of reliability. The fact that the informant gave Officer Kimball general information about drug houses and markets, that Officer Kimball knew was correct from his experience as a law enforcement officer, does not overcome this significant deficiency. The factor of being an informant on previous occasions serves the purpose of showing that the informant was reliable in the past, establishing a track record of reliability. The statements given by the informant to Officer Kimball concerning drug activity in Charlotte, even if about specific drug markets and the like, were merely statements showing the informant's knowledge of the drug trade in Charlotte; they were

not prior tips the police acted upon, which could establish a track record of reliability as an informant. *See Chadwick*, 149 N.C. App. at 203, 560 S.E.2d at 209 ("[a] known informant's information may establish probable cause based on a reliable track record"). Statements made in a relatively contemporaneous manner with the tip acted upon, which simply show knowledge of the drug trade in the area do not convert an informant who has never provided prior reliable tips in the past, into an informant with a reliable history. *See id.*

Further, the facts that the informant gave the police in this case were not as specific as the facts given by informants in the cases discussed above. Information the informant gave to the police that could be and was independently verified was that a black man in his thirties, driving a 1980's model, white, four-door Cadillac with spoke wheels, would arrive at the Fast Fare at the corner of Eastway and The Plaza at an approximate time. The informant only gave police defendant's first name, "Doug." The police did not check the registration of the vehicle that arrived at the Fast Fare, nor did they ask anyone other than the informant to confirm defendant's identity, as the deputies did in *Earhart*. I agree with the majority that the police need not verify the defendant's identity with someone else in every case, but such verification can strengthen the reliability of the informant's tip in the absence of other corroborating factors. The police in this case failed to independently verify key information given by the informant before ·stopping the vehicle. In addition, defendant's description of the man in the Cadillac was vague, consisting only of the identifying features that he was a black man in his thirties.

The case before us is further distinguishable from *Earhart* in that there was only one informant's tip, as opposed to the multiple, corroborating tips in *Earhart*. *Earhart*, 134 N.C. App. at 134, 516 S.E.2d at 886-87. Probable cause can be established on the basis of information provided by a single informant, *see Chadwick*, 149 N.C. App. at 203-04, 560 S.E.2d at 210; however, as shown in *Earhart*, when corroborating information is obtained from two different sources, the reliability of the information is strengthened under the totality of the circumstances test. *See Earhart*, 134 N.C. App. at 134, 516 S.E.2d at 886-87.

The present case is also distinguishable from *Chadwick*; the tip given by the informant in the present case did not include any details of what defendant would do once he arrived at the Fast Fare; the police did not verify every detail "with minute particularity," such as the identity of "Doug," nor did the police recognize defendant as the

officer in *Chadwick* did; and the informant in *Chadwick* had a history of proven reliability as an informant, unlike the informant in this case, despite the majority's conclusion to the contrary. *Chadwick*, 149 N.C. App. at 203-04, 560 S.E.2d at 210.

The majority relies on *State v. Martinez*, 150 N.C. App. 364, 562 S.E.2d 914, *appeal dismissed and disc. review denied*, 356 N.C. 172, 568 S.E.2d 859 (2002); however, I find that case distinguishable from the present case as well. In *Martinez*, the informant was a college student in his early twenties who had been apprehended in his residence after police had searched his house and discovered illegal drugs, contraband, and cash. *Id.* at 367, 562 S.E.2d at 916. The informant " 'was crying and . . . scared' " when he told the police that from a conversation the informant had with his normal suppliers, two Hispanic males, approximately an hour before the police arrived at the informant's residence, the suppliers were already "en route" to deliver a shipment of marijuana to his house and would " 'come right to [the informant's] door.' " *Id.* After receiving this information, an officer overheard a conversation between the informant and the two suppliers, when the suppliers called the informant and told him they would arrive in about twenty minutes. *Id.* A car matching the description provided by the informant, containing two Hispanic males, turned into the informant's driveway and pulled right up to the front door of the informant's home. *Id.*

In *Martinez*, although the tip did not describe the two suppliers with particular detail beyond the fact that they were two Hispanic males driving a small, white, four-door automobile, two men matching the description given by the informant pulled into the driveway of the informant's home and right up to the front door of the residence. *Id.* The lack of a particularly detailed description of the defendants in *Martinez* was balanced against the fact that the defendants drove into the driveway of a private home, as opposed to a convenience store, right up to the front door as predicted, and that the investigating police officer overheard the conversation the informant had with the defendants, confirming the transaction that had already been set up even before the police arrived at the informant's home. *See id.* at 369, 562 S.E.2d at 914.

In considering the totality of the circumstances, I believe the single informant's tip in the case before us was insufficient to allow the police to conduct a warrantless stop and arrest of defendant. While no one factor is necessarily conclusive, the failure to show sufficient past reliability of the informant, the fact that the

informant's tip did not provide specific logistical details of the drug transaction, and the fact that the police did not independently verify defendant's name using a license check or any other method, compel this conclusion. I would hold that the trial court erred in denying defendant's motion to suppress and would vacate and remand for a new trial.

For the above reasons I respectfully dissent. Because defendant would receive a new trial, I would not address defendant's second and third assignments of error in light of the fact that the informant's identity was revealed to defendant at the previous trial and would no longer be an issue; and because defendant would have sufficient time to subpoena Cunningham prior to a new trial.