STATE OF NORTH CAROLINA v. TAVARIS LAMONT FOWLER

No. COA11-1414

(Filed 1 May 2012)

**Search and Seizure—motion to·suppress—strip search—probable cause—exigent circumstances—reasonable manner**

The trial court did not err in a felony possession of cocaine case by denying defendant's motion to suppress evidence obtained after a "strip search" of defendant's person. The officers had probable cause to believe defendant was hiding the drugs on his person and exigent circumstances existed to justify the roadside strip search. Furthermore, the search was conducted in a reasonable manner.

Appeal by defendant from judgment entered 21 April 2011 by Judge Forrest D. Bridges in Mecklenburg County Superior Court. Heard in the Court of Appeals 6 March 2012.

*Attorney General Roy Cooper, by Assistant Attorney General J. Joy Strickland, for the State.*

*Danielle Blass for defendant appellant.*

McCULLOUGH, Judge.

On 21 April 2011, Tavaris Lamont Fowler ("defendant") pled guilty to felony possession of cocaine after the trial court denied his motion to suppress certain evidence found on his person at the time of his arrest. On appeal, defendant argues the trial court erred in denying his motion to suppress, contending the search of his person was conducted without probable cause and exigent circumstances, as required by this Court's opinion in *State v. Battle*, 202 N.C. App. 376, 688 S.E.2d 805, *disc. review denied*, 364 N.C. 327, 700 S.E.2d 926 (2010). We affirm.

I. Background

On the evening of 19 November 2009, Officer Brett Gant ("Officer Gant") of the Charlotte-Mecklenburg Police Department was working with a confidential informant to set up potential drug deals with multiple individuals, including defendant. Defendant subsequently contacted the informant by telephone and agreed to meet the informant for the exchange of a small amount of cocaine at a McDonald's restaurant on Beatties Ford Road in Charlotte, North Carolina. Officer Gant

and the informant drove in an unmarked vehicle to a parking lot across the street from the McDonald's restaurant, where the informant identified defendant's vehicle in the McDonald's parking lot approximately 100 feet away. When the informant did not show up to complete the deal, defendant left the McDonald's parking lot. Officer Gant proceeded to follow defendant headed inbound on Beatties Ford Road and relayed to fellow Officer Daniel Bignall ("Officer Bignall") that "[t]here was going to be a subject in a silver Kia with crack cocaine in the Beatties Ford Road corridor."

Officer Bignall was approximately four miles away from the McDonald's restaurant when he received the tip from Officer Gant. Officer Eric Mickley ("Officer Mickley") was riding with Officer Bignall at the time. Officer Bignall drove in the direction of Beatties Ford Road and observed a vehicle matching Officer Gant's description. Officer Gant approximated the vehicle was travelling at 45 miles per hour in a 35-mile-per-hour zone. Accordingly, Officer Bignall activated his patrol lights and stopped the vehicle, in which defendant was the driver.

Upon approaching defendant's vehicle, Officer Bignall informed defendant he was speeding "40, 45" miles per hour in a 35-mile-per-hour zone and asked defendant for his driver's license and registration. Defendant responded that he did not have a driver's license, but he produced a North Carolina identification card. Officer Bignall then asked defendant to step out of the vehicle, placed defendant in handcuffs, and stated to defendant that he was not under arrest. After checking defendant's information, Officer Bignall discovered defendant's driver's license had been permanently suspended. Defendant was placed under arrest for driving while license revoked. Officer Bignall asked defendant for permission to search the vehicle, to which defendant responded, "Go ahead." Officer Mickley conducted the search of defendant's vehicle and recovered a small amount of marijuana in an ashtray.

Believing defendant had drugs on his person, Officer Bignall proceeded to conduct a search of defendant's person. Officer Bignall asked defendant to remove his socks and shoes, and Officer Bignall proceeded to search defendant's pockets and waistband area. Officer Bignall then undid defendant's belt and looked down into defendant's pants while asking defendant to sway back and forth in an attempt to "loosen up anything that may have been hidden on his person." Officer Bignall stated he believed defendant was carrying drugs on his person because of the information relayed by Officer Gant and because there were signs of marijuana use in defendant's vehicle but

there was no plastic bag in the vehicle in which the marijuana would have been packaged.

Officer Bignall then told defendant he would need to conduct a second, more thorough search of defendant's person. Officer Bignall placed defendant in the backseat of his police vehicle and drove defendant to "the back side" of a school parking lot "behind or near a loading dock, so [they] were shielded by the loading dock, a fence, and [the] police vehicle." Officer Mickley secured defendant while Officer Bignall conducted the search. Officer Bignall dropped defendant's pants down and searched defendant's boxer briefs with his hand. Both Officer Bignall and Officer Mickley testified that defendant's underwear was not removed during the search. During the search, Officer Bignall discovered an object containing three grams of crack cocaine in the "kangaroo pouch" of defendant's boxer briefs, or the "fly area . . . where the two pieces of fabric overlap." The entirety of the vehicle stop was recorded by audio-video equipment on Officer Bignall's patrol vehicle.

On 8 March 2010, defendant was indicted for possession with intent to sell or deliver cocaine based on the events of 19 November 2009. Prior to trial, defendant filed a motion to suppress the evidence found on his person, arguing that no probable cause or exigent circumstances existed to warrant a public "strip search." On 19 April 2011, the trial court conducted a hearing on defendant's motion to suppress, during which Officers Gant, Bignall, and Mickley testified to the foregoing events. Defendant also testified in his own defense, stating the officers had removed not only his pants, but also his underwear, leaving his private parts exposed to view by other people. The trial court denied defendant's motion to suppress in open court on the following morning, 20 April 2011, and thereafter entered a written order denying the motion, concluding the searches of defendant's person were conducted incident to defendant's arrest and were reasonable.

The following day, on 21 April 2011, defendant decided to plead guilty to possession of cocaine while reserving his right to appeal the denial of his motion to suppress. The trial court accepted defendant's plea and sentenced defendant to seven to nine months' imprisonment. Defendant timely appealed from the trial court's judgment to this Court by written notice on 2 May 2011.

## II. Standard of Review

The scope of appellate review of a trial court's order granting or denying a motion to suppress evidence "is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982).

> Indeed, an appellate court accords great deference to the trial court in this respect because it is entrusted with the duty to hear testimony, weigh and resolve any conflicts in the evidence, find the facts, and, then based upon those findings, render a legal decision, in the first instance, as to whether or not a constitutional violation of some kind has occurred.

*Id.* at 134, 291 S.E.2d at 619-20.

If the trial court's findings of fact are supported by competent evidence, they are conclusive on appeal. *State v. Barnard*, 184 N.C. App. 25, 28, 645 S.E.2d 780, 783 (2007), *aff'd*, 362 N.C. 244, 658 S.E.2d 643 (2008). "While the trial court's factual findings are binding if sustained by the evidence, the court's conclusions based thereon are reviewable *de novo* on appeal." *State v. Parker*, 137 N.C. App. 590, 594, 530 S.E.2d 297, 300 (2000).

## III. Discussion

On appeal, defendant argues the trial court erred in denying his motion to suppress the evidence obtained during the search of his person because the search the officers performed was an unreasonable and intrusive public "strip search" that violated his constitutional rights. We disagree.

"The Fourth Amendment of the United States Constitution and Article 1 § 20 of the North Carolina Constitution preclude only those intrusions into the privacy of the body which are unreasonable under the circumstances." *State v. Johnson*, 143 N.C. App. 307, 312, 547 S.E.2d 445, 449 (2001). In determining whether an officer's conduct was reasonable in executing a search of the defendant's person, the trial court must balance " 'the need for the particular search against the invasion of personal rights that the search entails.' " *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 559, 60 L. Ed. 2d 447, 481 (1979)). " 'Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and

the place in which it is conducted.' " *Id.* (quoting *Wolfish,* 441 U.S. at 559, 60 L. Ed. 2d at 481).

In *Battle,* 202 N.C. App. 376, 688 S.E.2d 805, this Court emphasized that " ' "deeply imbedded in our culture . . . is the belief that people have a reasonable expectation not to be unclothed involuntarily, to be observed unclothed or to have their 'private' parts observed or touched by others." ' " *Id.* at 384, 688 S.E.2d at 813 (alteration in original) (quoting *State v. Stone,* 362 N.C. 50, 55, 653 S.E.2d 414, 418 (2007) (quoting *Justice v. City of Peachtree,* 961 F.2d 188, 191 (11th Cir. 1992))). Accordingly, in *Battle,* we noted that "[a] valid search incident to arrest . . . will not normally permit a law enforcement officer to conduct a roadside strip search." *Id.* at 387-88, 688 S.E.2d at 815. Rather, "[i]n order for a roadside strip search to pass constitutional muster, there must be both probable cause and exigent circumstances that show some significant government or public interest would be endangered were the police to wait until they could conduct the search in a more discreet location—usually at a private location within a police facility." *Id.* at 388, 688 S.E.2d at 815.

### A.  Strip Searches

We first address the State's contention that the requirements enunciated in *Battle* do not apply to the present case because the searches conducted of defendant's person did not rise to the level of "strip searches." As to this issue, the trial court made the following pertinent findings of fact:

9.  After the initial searches of defendant's person and vehicle did not produce the expected cocaine, Officer Bignall took the defendant back to the side of his patrol car, which was still parked on the side of Beatties Ford Road, to conduct a more thorough search of his person. Bignall placed the defend-ant between two open doors of the patrol car and unbuckled defendant's belt and loosened his trousers. He then pulled out the waistband of the pants and looked inside, telling the defendant to sway back and forth as he did so. This search was done on the roadside, as other vehicles were passing. . . . [T]he officers did not pull down defendant's pants or expose his private parts to any other person or to passing motorists. . . . This second search of defendant's person likewise produced no contraband.

10.  At this point, Officer Bignall placed defendant in the back of his patrol car and did further investigation into his prior

criminal record. . . . After finding a number of prior convictions, Bignall advised the defendant that he would be taken to jail for driving while license revoked. At this point it was clear that defendant was under arrest. Bignall then told defendant that he was going to do a "really good search."

11. [Officer Bignall] then drove his patrol car to the rear of the school parking lot, away from the roadway and passing motorists on Beatties Ford Road, when he conducted a third search of the defendant's person.

12. At the back of the parking lot, Bignall removed defendant from the patrol car, still handcuffed, and conducted a more extensive search of the defendant. During this search, Officer Bignall again unbuckled defendant's belt, loosened his trousers, and this time pulled down his pants. He then patted down defendant's groin, buttocks and private areas. . . . [T]he officer did not pull down defendant's underwear or otherwise expose his bare buttocks or genitals. . . . This third search, the most intrusive of the searches of defendant's person, was done in the back of a school parking lot, away from the public road and out of the view of passing motorists.

From these findings of fact, we conclude the searches of defendant's person constituted strip searches. During both searches, defendant's private areas were observed by Officer Bignall. In addition, during the third search, in which the contraband was found on defendant's person, defendant's pants were removed, leaving defendant in his underwear, and Officer Bignall searched inside of defendant's underwear with his hand. Moreover, in Finding of Fact number 16, the trial court expressly indicated the third search was "something in the nature of a 'strip search.' " Given the heightened privacy interests in one's "intimate areas," *see Stone*, 362 N.C. at 55, 653 S.E.2d at 418, we hold the second and third searches of defendant's person can properly be considered "[s]earches akin to strip searches." *State v. Smith*, 118 N.C. App. 106, 117, 454 S.E.2d 680, 687 (1995) (Walker, J., dissenting), *reversed per curiam on grounds stated in dissenting opinion*, 342 N.C. 407, 464 S.E.2d 45 (1995). Thus, the requirements of probable cause and exigent circumstances must be established to justify the strip searches of defendant in the present case, as enunciated in *Battle*.

## B. Probable Cause

Defendant's first argument on appeal is that no probable cause existed to warrant the roadside strip searches of his person. Probable cause is "a suspicion produced by such facts as indicate a fair probability that the person seized has engaged in or is engaged in criminal activity." *State v. Schiffer*, 132 N.C. App. 22, 26, 510 S.E.2d 165, 167 (1999). "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt, and . . . the belief of guilt must be particularized *with respect to the person to be searched* or seized[.]" *Battle*, 202 N.C. App. at 388, 688 S.E.2d at 815 (alterations in original) (internal quotation marks and citations omitted).

> When probable cause is based on an informant's tip a totality of the circumstances test is used to weigh the reliability or unreliability of the informant. Several factors are used to assess reliability including: "(1) whether the informant was known or anonymous, (2) the informant's history of reliability, and (3) whether information provided by the informant could be and was independently corroborated by the police."

*State v. Green*, 194 N.C. App. 623, 627, 670 S.E.2d 635, 638 (quoting *State v. Collins*, 160 N.C. App. 310, 315, 585 S.E.2d 481, 485 (2003)), *aff'd*, 363 N.C. 620, 683 S.E.2d 208 (2009).

Here, regarding probable cause to further search defendant's person, the trial court found as fact that "Officer Bignall persisted in conducting an extensive search of defendant's person due to the fact that he had received information from Officer Gant and his informant that defendant would be traveling on Beatties Ford Road in a silver Kia, carrying 3 grams of crack cocaine. His initial search[] of the vehicle and the defendant had not produced this cocaine."

Defendant argues the trial court's finding on probable cause is erroneous because the information provided by the confidential informant was vague, lacked sufficient specificity, and lacked sufficient reliability to provide legal justification for the extensive search of his person. Specifically, defendant contends there is no competent evidence to support the trial court's finding of fact that "[t]he informant . . . told [Officer] Gant that defendant would be arriving in a silver *Kia*[.]" (Emphasis added.) Defendant contends the evidence indicates only that the informant told the officer that defendant would be travelling in a "silver *vehicle*" to and from the McDonald's parking lot, which is broad enough to apply to many cars in the vicinity. (Emphasis added.) In addition, defendant contends the informant

did not provide any other identifying information or description of defendant, nor did the informant identify any quantity of drugs that defendant would be carrying or state that defendant would be carrying drugs on his person. Defendant further contends the informant's information was not sufficiently reliable to provide legal justification for a search of his person because the officers did not corroborate any of the informant's information.

At the hearing on defendant's motion to suppress, Officer Gant testified that the confidential informant involved in this case was not only known to him, but also to another detective at the police department who had used the informant on a prior occasion. Officer Gant testified that the informant was a paid informant registered with the police department's Vice and Narcotics Division and that information from the informant had led to the arrest of at least six other individuals during the week prior to the arrest of defendant. Officer Gant testified that the informant had contacted a specific telephone number to set up a drug deal, and that individual had returned the informant's call to set up the deal for a "small amount of cocaine" at the McDonald's restaurant on Beatties Ford Road. Officer Gant testified that the informant was in Officer Gant's vehicle when the informant both made and received the phone calls. Officer Gant testified that immediately after the phone calls, the informant travelled with Officer Gant to a parking lot approximately 100 feet away from the McDonald's restaurant, where the informant identified defendant's vehicle as the individual who "showed up based on the phone call." Officer Gant testified that he actually saw defendant in the vehicle identified by the informant. Officer Gant testified that when defendant left the McDonald's parking lot, Officer Gant actually followed defendant onto Beatties Ford Road while providing a description of defendant's vehicle to Officer Bignall. Although Officer Gant could not remember the exact description given of defendant's vehicle, Officer Bignall testified twice that he received information from Officer Gant that "[t]here was going to be a subject in a silver *Kia* with crack cocaine in the Beatties Ford Road corridor." (Emphasis added.) Officer Bignall further testified that "[i]t was less than a minute" between the time he received the call from Officer Gant and the time he observed defendant's vehicle and that defendant's vehicle was "the only silver vehicle on Beatties Ford Road at that time going inbound."

After stopping defendant's vehicle, defendant consented to a search of his vehicle, in which a small amount of marijuana was

found, but no cocaine. Accordingly, there is competent evidence in the record to show that the informant, who was known to the officers and who had provided reliable information in the past, provided sufficient reliable information, corroborated by Officer Gant, to establish probable cause to believe that defendant would be carrying a small amount of cocaine in his vehicle. When the consensual search of defendant's vehicle did not produce the cocaine, the officers had sufficient probable cause, under the totality of the circumstances, to believe that defendant was hiding the drugs on his person. Thus, defendant's arguments that the officers lacked probable cause to conduct a more extensive search of his person are without merit.

## C. Exigent Circumstances

Regarding exigent circumstances warranting the roadside strip search of defendant, the trial court made the following finding of fact:

> [Officer Bignall] knew that the defendant had experience with the intake procedures at the Mecklenburg County Jail, including search policies. He also reasonably could anticipate that defendant, even though handcuffed, would do anything possible to dispose of any contraband on his person prior to undergoing extensive (including "strip") search procedures at the jail. These circumstances constituted exigent circumstances that justified the extensive and intrusive nature of the third search of the defendant.

Defendant argues the State presented no evidence to support the trial court's finding that exigent circumstances existed to justify the intrusive search of his person. Defendant points out that less intrusive means of searching his person were readily available to the officers.

However, although defendant argues no testimony was presented supporting a finding of exigent circumstances, the trial court's finding is nonetheless supported by the transcript of the audio-video recording produced from Officer Bignall's police vehicle, which was admitted into evidence at the suppression hearing. The transcript reveals multiple conversations between Officer Bignall and defendant regarding defendant's prior criminal record, which included felony drug offenses, prior to the strip search of defendant in the school parking lot. Further, the transcript reveals defendant's constant begging and pleading with Officer Bignall not to take defendant to jail. This is competent evidence supporting the trial court's finding of fact that Officer Bignall knew defendant had prior experience with intake

procedures at the jail and that he could reasonably expect that defendant would attempt to rid himself of any evidence in order to prevent his going to jail.

In addition, although defendant points out that testimony was presented that a police station was located just down the street from the location of the stop on Beatties Ford Road, there is no evidence in the record indicating that this particular police station was open and operating at the time of defendant's stop, which was approximately 11:00 p.m. at night, or that the officers would be able to conduct a more private search at that location. Moreover, this Court has previously noted that "'[t]he reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative "less intrusive" means.'" *Battle*, 202 N.C. App. at 393, 688 S.E.2d at 818 (quoting *Illinois v. Lafayette*, 462 U.S. 640, 647, 77 L. Ed. 2d 65, 72 (1983)). Thus, defendant's arguments that no exigent circumstances existed to justify the search of his person are likewise without merit.

### D. Reasonableness of the Search

Having concluded the requirements set forth in *Battle* for conducting a roadside strip search—probable cause and exigent circumstances—were properly found by the trial court, we summarily address the reasonableness of the search of defendant's person conducted by the officers. Notably, the trial court found as fact that the third most intrusive search of defendant's person, during which the drugs were found in his boxer briefs, "took place at night, in a dark area, away from the traveled roadway, with no other people in the immediate vicinity other than defendant and the officers." Further, the trial court found as fact that "the officer did not pull down defendant's underwear or otherwise expose his bare buttocks or genitals" and that "[n]o females were present or within view of the defendant during this search." Defendant does not challenge these findings regarding the reasonableness of the searches of his person. These findings support the trial court's conclusion that, although the searches of defendant's person were intrusive, they were conducted in a discreet manner away from the view of others and limited in scope to finding a small amount of cocaine based on the corroborated tip of a known, reliable informant.

Although defendant relies heavily on the opinion and holding in *Battle* to support his argument that the search the officers performed in this case was an unreasonable and intrusive public strip search

that violated his constitutional rights, the trial court's findings of fact, supported by competent evidence, readily distinguish this case from the facts of *Battle*. First, in *Battle*, after stopping the vehicle in which the defendant was a passenger based on a confidential informant's tip, no drugs or drug paraphernalia were found on the scene prior to the officer's conducting a strip search of the defendant. *Id.* at 402, 688 S.E.2d at 823-24. Notably, the confidential informant in *Battle* provided no information "concerning who in the vehicle might have the drugs." *Id.* at 402, 688 S.E.2d at 823. In addition, although a female officer conducted the strip search of the defendant in *Battle*, a male officer stood close by holding a Taser gun ready for use on the defendant if she did not cooperate with the female officer's search. *Id.* at 379, 688 S.E.2d at 810. Further, the strip search of the defendant in *Battle* was conducted in broad daylight "on a street with both pedestrians and vehicles in the immediate vicinity." *Id.* at 401, 688 S.E.2d at 823. Specifically, "[t]here were vehicles driving by, people on their front porches, and a nursing home slightly to the front of the vehicle[.]" *Id.* at 393, 688 S.E.2d at 818 (internal quotation marks omitted). Moreover, "[t]he State presented no evidence of exigent circumstances" and the trial court entered no findings of fact or conclusions of law as to any exigent circumstances justifying such an intrusive search of the defendant. *Id.* at 396, 402, 688 S.E.2d at 820, 824. Thus, in *Battle*, we concluded the manner in which the search was conducted was inappropriate and the place in which the search was conducted was likely to increase the humiliation of the defendant; therefore, the roadside strip search of the defendant in *Battle* did not pass constitutional muster. *Id.* at 402-03, 688 S.E.2d at 824.

Here, however, the search of defendant was based on corroborated information that defendant himself would be carrying drugs, and a small amount of marijuana was found during the consensual search of defendant's vehicle. Moreover, the search of defendant here took place at night in a discreet location, away from any vehicle or pedestrian traffic, and no females were present during the search. Finally, the trial court specifically made findings of fact, supported by the transcript of the audio-video recording of the stop, concerning the exigent circumstances justifying the strip searches of defendant. Thus, given these circumstances, we hold the trial court properly concluded the searches of defendant's person were reasonable and did not violate his constitutional rights.

## IV.  Conclusion

We hold the second and third searches of defendant's person in the present case can properly be classified as searches akin to strip searches, and therefore, they must be justified by both probable cause and exigent circumstances.

Testimony by Officers Gant and Bignall support the trial court's finding of fact that the officers had probable cause to believe defendant was hiding drugs on his person, given the reliable and corroborated information provided by the confidential informant. The transcript of the audio-video recording from Officer Bignall's police vehicle supports the trial court's finding of fact regarding the exigent circumstances necessitating the strip search of defendant at the time of his arrest. Finally, although the strip searches of defendant's person were intrusive, they were conducted in a discreet manner and in a discreet location, away from the roadside, and were limited in scope to finding drugs on defendant's person.

Thus, we hold the competent evidence in the record supports the trial court's findings of fact, and the trial court's findings of fact support its conclusion of law that the strip searches of defendant's person conducted incident to his arrest in the present case were reasonable and did not violate his constitutional privacy interests.

Affirmed.

Judges McGEE and GEER concur.