ELMORE, Judge, dissenting.
I respectfully disagree with the majority's conclusion that the strip search was reasonable and did not violate defendant's rights under the Fourth Amendment. I would conclude that the trial court erred in denying defendant's motion to suppress as the officers did not have a justification to perform the strip search. No exigent circumstances or supporting facts existed prior to initiating the strip search to justify the heightened intrusion into defendant's right to privacy. Alternatively, there were no reasonable grounds to believe that defendant was secreting a controlled substance under his outer clothing, obviating the need for exigent circumstances and additional facts. The trial court's conclusions of law in paragraphs four, five, and seven are not supported by any competent evidence.
On appeal, defendant argues that at the inception of the strip search, neither particularized probable cause nor exigent circumstances justified *303 the strip search. Defendant argues, "[T]he trial court improperly relied on Officer Honaker's observation of the white crystal substance on the floor in determining whether the totality of the circumstances justified the search." Further, he argues, "The smell of marijuana did not provide Officer Honaker with the requisite probable cause to believe [defendant] had contraband concealed in his underwear or buttocks[.]" Defendant also claims that his arrest, based on a drug offense that "occurred at a different time and in a different state" did not justify the strip search. Lastly, "Whether [defendant] gave a false name to avoid arrest does not speak to-let alone provide probable cause to believe-that [defendant] had secreted contraband beneath his underwear or in his buttocks, and thus cannot serve as justification for the strip and cavity search." I agree.
In State v. Battle, this Court stated, "For a search to comply with the requirements of Fourth Amendment jurisprudence, there must be sufficient supporting facts and exigent circumstances prior to initiating a strip search to justify this heightened intrusion into a suspect's right to privacy." 202 N.C.App. 376, 392, 688 S.E.2d 805, 817 (2010). The majority cites to State v. Robinson, decided by this Court after Battle. In Robinson, we "conclude[d] that the mode of analysis outlined in Battle and adopted in Fowler only applies in the event that the investigating officers lack a specific basis for believing that a weapon or contraband is present beneath the defendant's underclothing." State v. Robinson, 221 N.C.App. 266, 281, 727 S.E.2d 712, 722 (2012) ; State v. Fowler, 220 N.C.App. 263, 268, 725 S.E.2d 624, 629 (2012) ("[T]he requirements of probable cause and exigent circumstances must be established to justify the strip searches of defendant in the present case, as enunciated in Battle. ") see also State v. Johnson, 225 N.C.App. 440, 451, 737 S.E.2d 442, 449 (2013) ; ("Battle does not apply because there was sufficient information to provide a sufficient basis for believing that contraband was present beneath defendant's underwear.") (citations and quotations omitted). As a result, in Robinson, we held that the evidence "indicate[d] that various items of drug-related evidence were observed in the vehicle in which Defendant was riding, that Defendant made furtive movements towards his pants, and that Detective Tisdale felt a hard object between Defendant's buttocks."
*361 Robinson, 221 N.C.App. at 281, 727 S.E.2d at 722. "For that reason, it is clear that Detective Tisdale had ample basis for believing that contraband would be discovered beneath Defendant's underclothing." Id.
The majority declines to decide whether the trial court was required to find the existence of exigent circumstances and evidence supporting a reasonable belief that defendant was secreting a controlled substance *304 from under his outer clothing. Assuming that it was, the majority concludes that both were present. The majority finds exigent circumstances in the fact that the crystals found on the floor in the dining room indicated that they were leaving defendant's person quickly, leading to possible destruction of evidence and danger to defendant. Additionally, the majority finds that the presence of the white powder also gives rise to a reasonable suspicion that defendant was concealing narcotics under his clothes. For the reasons stated below, this evidence, found only after initiating the strip search, cannot provide a justification to conduct the search.
The mode of analysis outlined in Battle applies because the investigating officers lacked sufficient information providing a specific basis for believing that a weapon or contraband was present beneath defendant's underclothing. Robinson, 221 N.C.App. at 281, 727 S.E.2d at 722. Accordingly, I contend that the trial court was required to find exigent circumstances and sufficient supporting facts justifying the heightened intrusion into defendant's right to privacy, and that neither requirement was present here. Although Battle dealt with a roadside strip search and the strip search conducted here took place inside a home, the place in which the strip search was conducted is only one factor in the totality of the circumstances inquiry, and the analysis is still controlling.
In addressing exigent circumstances and the justification for initiating the strip search, the trial court's conclusions of law state the following:
The court finds that there were exigent circumstances including: the fact that the crystals on the floor where defendant was standing indicated that they were leaving the defendants person [sic] quickly leading to possible loss or destruction of evidence and that the bag of cocaine was not sealed leading to a danger to the defendant of absorbing some of the substance through his large intestine....
The officers had justification to perform the search. Officer Honaker had a specific basis to believe drugs were hidden on the defendant because of the cocaine where the defendant was standing and the odor of marijuana coming from defendant's person. Further the defendant's actions of giving a false name, attempting to conceal his identity to avoid arrest further justified the search.
I respectfully disagree with the majority's conclusion that based on Rule 10 of our Rules of Appellate Procedure we cannot consider *305 defendant's argument that the trial court erred in considering the presence of the white powder in justifying the strip search.
At the hearing, the trial court stated to defendant's counsel, "[The State's] saying it's a search incident to the arrest. Do you have any response?" Defendant's counsel responded that this was not a search incident to arrest because the police officers did not have probable cause to arrest defendant. Defendant's counsel argued that the police officers only knew that there was an outstanding warrant possibly for defendant that they needed to look into and that they smelled burnt marijuana in the residence. The trial court then asked defendant's counsel, "What about the powder on the floor?" He responded that, without knowing what the substance was, there were no grounds for an arrest.
Based on this, the majority concludes that "because defendant failed to raise the timing of Officer Honaker's observation of powder on the floor 'as an issue in the trial court at the hearing on his motion to suppress, the issue is not properly before this Court on appeal, and we therefore will not consider it.' " I contend, however, that defendant may properly argue on appeal that the trial court's conclusions of law were in error. "Conclusions of law are reviewed de novo and are fully reviewable on appeal." State v.
*362 Williams, 366 N.C. 110, 114, 726 S.E.2d 161, 165 (2012) (citations and quotations omitted).
Here, Officer Honaker made the decision to conduct a strip search of defendant when defendant was in the living room. Accordingly, the trial court was required to analyze the justification for the strip search based on facts known to the officers up to that point. The State may not justify the strip search based on facts acquired after initiating the strip search, even if such facts became known just prior to the most intrusive part of the search-removal and/or lowering of defendant's pants and boxers. Thus, the fact that Officer Honaker observed a white powder on the floor in the dining room after attempting unsuccessfully to disrobe defendant cannot justify his earlier decision to conduct the strip search. Likewise, it cannot serve as the exigent circumstance or supporting fact.
In Battle, this Court stated the following:
More relevant to our analysis, Defendant's reaction to Detective Curl's attempts to unzip her pants was not, as the trial court stated, "immediately prior to [Defendant's] being search[ed]." At the time Defendant reached towards the top of her pants, Detective Curl had already initiated the strip search, as she was in the process of attempting to unzip Defendant's pants. Defendant's actions during the *306 strip search cannot retroactively serve as a basis for justifying that strip search.
202 N.C.App. at 392, 688 S.E.2d at 817 (emphasis added). Here, the trial court similarly concluded that defendant's reaction to Officer Honaker's attempt to unbuckle his belt was before the strip search began, and that conclusion cannot stand.
As in Battle, I would conclude that the strip search violated defendant's Fourth Amendment rights. Without considering the white powder, the only justification for conducting the strip search was the smell of marijuana, defendant providing a false first name, and an outstanding warrant in New York for a drug offense. The officers went to Farthing's home looking for Farthing. They were not looking for defendant, they were not acting on a confidential informant's tip that defendant was carrying drugs, see Fowler, 220 N.C.App. at 273, 725 S.E.2d at 631 (emphasizing that the strip search "of defendant was based on corroborated information that defendant himself would be carrying drugs"), and they did not feel a blunt object in defendant's crotch area during the patdown, see Johnson, 225 N.C.App. at 452, 737 S.E.2d at 449 ("[M]ost significantly, Trooper Hicks felt a blunt object in defendant's crotch area during the pat-down, directly implicating defendant's undergarments."). "The record shows that the strip search was conducted on the mere possibility that drugs would be found on Defendant's person.... This fails to meet constitutional muster." Battle, 202 N.C.App. at 392, 688 S.E.2d at 818. There must be more than a mere possibility that a suspect could be hiding contraband in his undergarments "in order to justify an intrusion of the magnitude of a strip search." Id. at 399, 688 S.E.2d at 822.