STATE v. JOHNSON

[225 N.C. App. 440 (2013)]

STATE OF NORTH CAROLINA
v.
DAVID HAROLD JOHNSON, Defendant

No. COA12-827

Filed 5 February 2013

## 1. Search and Seizure—probable cause—roadside search

The trial court correctly concluded in a prosecution for multiple drug offenses, including trafficking, that officers had probable cause to search defendant where defendant smelled of marijuana, the troopers had discovered in defendant's car a scale of the type used to measure drugs, a drug dog had alerted in defendant's car, and during a pat-down the troopers had noticed a blunt object in the inseam of defendant's pants during a pat down.

## 2. Search and Seizure—roadside search inside clothes—sufficient basis

In a prosecution involving drug trafficking, there was sufficient information to provide a basis for believing that contraband was present beneath defendant's underwear. Even assuming that what followed was a strip search, *State v. Battle*, 202 N.C. App. 376, did not apply and the trial court did not err by denying defendant's motion to suppress.

## 3. Search and Seizure—roadside search inside clothes—steps to protect privacy

Officers doing a roadside search of defendant by pulling his pants away from his body took reasonable steps to protect defendant's privacy where the only private areas subjected to search by the troopers remained covered by defendant's compression shorts and they did not remove his pants or outer underwear to retrieve the package of drugs from his pants.

## 4. Evidence—officer's opinion—scales of type used for drugs

The trial court did not err in a prosecution for multiple drug offenses by admitting an officer's testimony that the scales found in defendant's car were of the type often used to measure drugs, especially marijuana. The State did not indict defendant on the theory that the scales were drug paraphernalia, but that a wrapping used to contain the cocaine, heroin, and marijuana found in his boxers was drug paraphernalia.

**5. Drugs—paraphernalia—scales—indicted for cellophane wrap**

Defendant's argument that there was insufficient evidence that scales found in his car were used as drug paraphernalia was irrelevant where the State indicted him for using a cellophane wrap found in his boxer shorts as a drug container, not for using the scales as drug paraphernalia.

**6. Drugs—no independent testing of marijuana—trooper's opinion**

Although defendant argued there was insufficient evidence to support his conviction for misdemeanor possession of marijuana because there was no independent testing of the green, leafy substance found in the cellophane wrapping, Trooper Hicks's testimony identifying the "green vegetable substance" introduced at trial as marijuana constituted substantial evidence that the substance in question was, in fact, marijuana.

**7. Constitutional Law—double jeopardy—possession or transportation of cocaine or heroin**

Defendant conceded that there was case law directly contrary to his position that punishing him for possession or transportation of cocaine and heroin violated the Double Jeopardy Clause.

Appeal by defendant from judgments entered 2 February 2012 by Judge Thomas H. Lock in Superior Court, Johnston County. Heard in the Court of Appeals 13 December 2012.

*Attorney General Roy A. Cooper, III by Assistant Attorney General Marc X. Sneed, for the State.*

*Parish & Cooke by James R. Parish, for defendant-appellant.*

STROUD, Judge.

David Harold Johnson ("defendant") appeals from the trial court's denial of his motion to suppress evidence seized from his person and subsequent convictions for trafficking in cocaine by possession and transportation, trafficking in heroin by possession and transportation, possession of marijuana, and possession of drug paraphernalia. For the following reasons, we affirm the trial court's denial of defendant's motion to suppress and find no error in his trial.

## I. Background

On 1 August 2011, defendant was indicted for trafficking in cocaine by possession and transportation, trafficking in heroin by possession and transportation, possession of marijuana, possession of drug paraphernalia, driving without a license, resisting, delaying, or obstructing a public officer, and assault on a government officer. Defendant moved to suppress evidence seized from his person as fruits of an illegal search. The trial court denied defendant's motion by order entered 16 February 2012. Defendant pleaded not guilty and proceeded to jury trial. The evidence at trial showed that:

On 15 June 2011, defendant was travelling south on I-95 in Johnston County. Trooper Michael Hicks with the North Carolina Highway Patrol observed defendant's car following the car in front of him too closely and saw defendant hold up a cell phone without putting it to his ear. Trooper Hicks pulled defendant over for following too closely and texting while driving. When he approached defendant's vehicle he noticed the strong odor of marijuana coming from defendant's vehicle. Trooper Hicks asked defendant to step out and sit in the front passenger seat of his patrol car.

Trooper Hicks asked if he could frisk defendant for weapons and defendant agreed. In the course of his frisk, Trooper Hicks did not find anything that appeared to be a weapon, though he felt a blunt object in the inseam of defendant's pants. After the frisk, defendant sat in the front seat of Trooper Hicks's patrol car while Trooper Hicks ran defendant's license information. While in the patrol car, Trooper Hicks still smelled a strong odor of marijuana coming from defendant.

Trooper Hicks advised defendant that he had noticed the strong odor of marijuana both on defendant and in defendant's car. Defendant gave Trooper Hicks permission to search his pockets and his car. In his initial search, Trooper Hicks found nothing in defendant's pockets and found only some receipts, a parking ticket, a scale of the type typically used by drug dealers, and an open package of boxer briefs in the trunk. A K-9 unit arrived with a dog trained in drug detection. The troopers ran the dog through the car and he alerted to the odor of contraband in the car's trunk and on the driver's seat.

Trooper Hicks proceeded to search defendant's person, but found nothing in defendant's outer clothing. Trooper Hicks then placed defendant on the side of his vehicle, so that the vehicle was between defendant and the travelled portion of the highway. Other troopers

stood around defendant to prevent passers-by from seeing him. Trooper Hicks then pulled the front waistband of defendant's pants away from his body and looked inside. Defendant was wearing two pairs of underwear—an outer pair of boxer briefs and an inner pair of athletic compression shorts. Between the two pairs of underwear Trooper Hicks discovered a cellophane package containing several smaller packages. When Trooper Hicks saw the package, defendant turned, hit another trooper in the face and fled for the nearby woods. The troopers quickly apprehended defendant. Trooper Hicks cut open the package and found that the smaller packages contained a green, leafy substance that, in his opinion, was marijuana; a tan, rock-like substance, later identified by chemical testing to be heroin; and a white powdery substance later identified by chemical testing to be cocaine.

Defendant moved to dismiss all charges against him. The trial court granted defendant's motion as to driving without a license, but denied his motion as to all other charges. The jury found defendant not guilty of assaulting a government officer and guilty of the remaining offenses. Defendant was sentenced to 225-279 months confinement in the Division of Adult Correction for trafficking in heroin, and a consecutive sentence of 35-42 months confinement for trafficking in cocaine, possession of marijuana, resisting a public officer, and possession of drug paraphernalia. Defendant gave notice of appeal in open court.

## II. Motion to Suppress

Defendant first argues that the trial court should have granted his motion to suppress the cocaine, heroin, and marijuana found in his boxers because the search was neither incident to arrest nor pursuant to exigent circumstances justifying a strip search.

### A. Standard of Review

It is well established that the standard of review in evaluating a trial court's ruling on a motion to suppress is that the trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting. In addition, findings of fact to which defendant failed to assign error are binding on appeal. Once this Court concludes that the trial court's findings of fact are supported by the evidence, then this Court's next task is to determine whether the trial court's conclusions of law are supported by the find-

ings. The trial court's conclusions of law are reviewed *de novo* and must be legally correct.

*State v. Eaton*, ____ N.C. App. ____, ____, 707 S.E.2d 642, 644-45 (quotation marks and citation omitted), *disc. rev. denied*, 365 N.C. 202, 710 S.E.2d 25 (2011).

B. Search Based on Probable Cause and Exigent Circumstances

[1] Defendant does not challenge any of the trial court's findings of facts and only challenges conclusions of law 6, 7, and 8. Therefore, the findings of fact are binding on appeal, *id.*, and we consider any challenge to the other conclusions abandoned, N.C.R. App. P. 28(a).

The trial court made the following relevant findings of fact and conclusions of law:

> 7.  Trooper Hicks immediately detected the strong odor of green or raw marijuana coming from defendant's vehicle. . . . . .
>
> 9.  Trooper Hicks asked defendant to sit in the front passenger seat of the patrol car and defendant complied. Before defendant got in the patrol car, Trooper asked defendant if he could frisk defendant for any weapons and defendant agreed. While frisking defendant, Trooper Hicks felt a blunt object in the inseam of defendant's pants, but he did not believe the object to be a weapon.
>
> . . . .
>
> 11.  Trooper Hicks had not told defendant he was under arrest and defendant in fact was not under arrest while seated in the patrol vehicle.
>
> . . . .
>
> 13.  Defendant stated that he had been in Virginia visiting his girlfriend, the mother of his child. Defendant said he could not recall the name of the place he had visited in Virginia.
>
> 14.  Trooper Hicks asked defendant about the marijuana odor and defendant replied that marijuana had been used in his vehicle the day before. Defendant said that he had been eating chicken in the car before Trooper

Hicks stopped him. Trooper Hicks asked defendant if he had ever been arrested, and defendant stated that he had been arrested for traffic violations, for fighting, and for marijuana use.

. . . .

16. While Trooper Hicks was talking with the defendant in his patrol car, another member of the Asheville crime interdiction unit, Trooper Harold Stines, who also was working in the area, arrived on the scene with a canine. Trooper Stines and the dog named A-Rod had been trained and certified together in drug detection by the U.S. Customs and Border Protection Agency.

. . . .

17. Trooper Hicks asked Trooper Stines to walk around defendant's vehicle with the dog. A-Rod exhibited a change in behavior in the area of the vehicle's trunk, indicating the presence of a controlled substance there. Trooper Stine opened the trunk, placed A-Rod inside, and the dog assumed a "final response" position, confirming the presence of some controlled substance. Trooper Stine then place [sic] A-Rod inside the passenger area of the vehicle, and A-Rod alerted in the driver's seat. Trooper Stines himself could smell the odor of raw marijuana coming from the vehicle.

18. Other troopers with the Asheville crime interdiction unit also arrived on the scene. The troopers searched defendant's vehicle. They found no controlled substances, but they found in the passenger compartment an opened package of boxer-briefs underwear, a parking citation issued by the City of New York on 12 June 2011 at 5:40 p.m., and a receipt from a McDonald's restaurant in the Bronx, New York, reflecting a purchase made on 11 June 2011 at 11:58 p.m. They also found in the trunk a digital scale of the type commonly used by drug dealers for the weighing of illegal drugs.

. . . .

20. After the troopers had completed their search of defendant's vehicle, Trooper Hicks told defendant that

he still smelled marijuana about defendant's person and that he was going to search his person. At that time, Trooper Hicks had decided to issue a citation to defendant for possession of drug paraphernalia, but he did not disclose that intent to defendant.

21. Trooper Hicks asked defendant to remove his shoes, but the trooper found nothing in them. Trooper Hicks then asked the defendant to get out of the patrol vehicle and Trooper Hicks and the other troopers, a total of six, formed a semicircle around him.

22. Other than telling Trooper Hicks in the patrol car that he could search defendant's pockets, defendant did not consent to a search of his person.

23. The troopers stationed themselves and the defendant on the passenger side of a patrol car, and they positioned themselves around the defendant in such a manner as to block a view of the defendant by any passersby travelling on the interstate.

24. Trooper Hicks began to search defendant's outer clothing and again felt the blunt object in the inseam of defendant's pants. As Trooper Hicks frisked the area around defendant's groin and inner thighs, defendant turned his body away from the trooper.

25. Trooper Hicks pulled the front waistband of defendant's pants forward and looked inside. He could see that defendant was wearing two pairs of underwear. The outer pair was a pair of boxer-briefs like those found in the passenger compartment of defendant's vehicle. The inner pair was a pair of compression type athletic shorts with the protective cup missing. In between the two pairs of underwear, outside the place of the missing protective cup, Trooper Hicks observed a softball sized mound of cellophane.

26. Trooper Hicks reached inside defendant's waistband and removed the cellophane wrapped package. It appeared to be layers of cellophane wrapped around coffee grounds and smaller packages of controlled substances.

27. As Trooper Hicks removed the package from defendant's pants, defendant suddenly wheeled, struck one of the troopers, and ran toward the woods by the highway. The troopers immediately overtook defendant, subdued him, and arrested him.

28. The troopers did not remove or pull down defendant's pants while searching him. Defendant was wearing his pants with the waist of the pants low around his buttocks. Defendant's private areas were never exposed during the search.

CONCLUSIONS OF LAW:

. . . .

4. Trooper Hicks also had the right to search defendant's vehicle without a warrant under exigent circumstances based on probable cause to believe that such a search would yield evidence of controlled substances because of the strong odor of marijuana coming from the vehicle, the alerts or indications of the presence of controlled substances exhibited by the dog specially trained in drug detection, and defendant's apparent deceptive and misleading statements as to his itinerary.

5. Following the troopers' discovery of the digital scaled inside defendant's vehicle, Trooper Hicks had probable cause to arrest defendant for a violation of NCGS 90-113.22(possession of drug paraphernalia) committed in the trooper's presence.

. . . .

7. Assuming *arguendo* that Trooper Hicks could not search defendant incident to arrest, the trooper had probable cause to conduct a warrantless search of defendant's person under exigent circumstances based on the strong odor of marijuana about his person, the alerts exhibited by the drug dog in the driver's seat of defendant's vehicle, the discovery of the digital scales during the search of defendant's vehicle, and defendant's apparent deceptive and misleading statements as to his itinerary.

8. The troopers took necessary and reasonable precautions to guard against public exposure of defendant's private areas during the search of his person, and the search of his private areas was not constitutionally intolerable in its intensity or scope.

9. None of defendant's federal or state constitutional rights were violated by the stop of his vehicle, the search of his vehicle or person, or the manner in which the search of his person was conducted.

Defendant argues that he was subjected to a strip search requiring probable cause and exigent circumstances and that the trial court erred in concluding that the search was constitutional based on exigent circumstances. For the following reasons, we hold that the trial court correctly concluded that the troopers had probable cause to search defendant for contraband, exigent circumstances to search him without a warrant, and had conducted the search of defendant's person reasonably.[1]

The governing premise of the Fourth Amendment is that a governmental search and seizure of private property unaccompanied by prior judicial approval in the form of a warrant is *per se* unreasonable unless the search falls within a well-delineated exception to the warrant requirement. One such exception exists when there are exigent circumstances justifying a warrantless search. Probable cause has been defined as a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty.

*State v. Yates*, 162 N.C. App. 118, 122, 589 S.E.2d 902, 904 (2004) (citations, quotation marks, and ellipses omitted).

In *Yates*, we held that where the searching officer noticed a strong odor of marijuana about the defendant's person, that officer had probable cause to search the defendant. *Id.* at 123, 598 S.E.2d at 905. We further concluded that because "narcotics can be easily and quickly hidden or destroyed, especially after defendant received notice of [the officer's] intent to discover whether defendant was in

---

1. Because we conclude that the troopers lawfully searched defendant without a warrant, pursuant to probable cause and under exigent circumstances, we need not reach the issue of whether the search was incident to arrest.

possession of marijuana . . . there were sufficient exigent circumstances justifying an immediate warrantless search." *Id.*

In the present case, there was evidence not only that defendant smelled of marijuana, but that the troopers had discovered in his car a scale of the type used to measure drugs, a drug dog had alerted in his car, including on the driver's seat, and during a pat-down the troopers had noticed a blunt object in the inseam of defendant's pants. We hold that these facts, as found by the trial court, support conclusion 7 that the troopers searched defendant's person with probable cause and that, for the reasons stated in *Yates, see id.*, the trial court did not err in concluding that the troopers did so in exigent circumstances sufficient to justify a warrantless search.

**[2]** Having concluded that the initiation of the search was valid, we must consider whether the conduct of the search was reasonable.

> The Fourth Amendment of the United States Constitution and Article 1 § 20 of the North Carolina Constitution preclude only those intrusions into the privacy of the body which are unreasonable under the circumstances. In determining whether an officer's conduct was reasonable in executing a search of the defendant's person, the trial court must balance the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*State v. Fowler*, _____ N.C. App. _____, _____, 725 S.E.2d 624, 627-28 (2012) (citations and quotations marks omitted). This Court has

> emphasized that deeply imbedded in our culture is the belief that people have a reasonable expectation not to be unclothed involuntarily, to be observed unclothed or to have their 'private' parts observed or touched by others. Accordingly, in *Battle*, we noted that a valid search incident to arrest will not normally permit a law enforcement officer to conduct a roadside strip search. Rather, in order for a roadside strip search to pass constitutional muster, there must be both probable cause and exigent circumstances that show some significant government or public interest would be endangered were the police to wait until they could conduct the

search in a more discreet location—usually at a private location within a police facility.

*Id.* (citations and quotation marks omitted).

Defendant argues that we must reverse the trial court's order denying his motion to suppress because it failed to find that the troopers searched him under exigent circumstances justifying a strip search, as required by *State v. Battle*, 202 N.C. App. 376, 688 S.E.2d 805 (2005). We disagree.

Both the U.S. Supreme Court and the courts of this State have been loath to define in precise terms exactly what constitutes a strip search. *See Safford Unified School Dist. No. 1 v. Redding*, 557 U.S. 364, 374, 174 L.Ed. 2d 354, 364 (2009) ("Although Romero and Schwallier stated that they did not see anything when Savana followed their instructions . . . we would not define strip search and its Fourth Amendment consequences in a way that would guarantee litigation about who was looking and how much was seen."); *Battle*, 202 N.C. App. at 381, 688 S.E.2d at 811 (observing that "neither the United States Supreme Court nor the appellate courts of this State have clearly defined the term 'strip search.' ").

Despite the absence of a precise definition of a strip search, it is true that the searches that this Court has considered "strip searches" generally consist of direct observation of the private areas of a defendant or the exposure of those private areas. *See, e.g., Fowler*, ___ N.C. App. at ___, 725 S.E.2d at 627-28 (search exposed bare buttocks and genitals), *Battle*, 202 N.C. App. at 385-86, 688 S.E.2d at 814 (officer unbuttoned and lowered defendant's pants, examined defendant's buttocks and reached into defendant's underwear at the level of defendant's pubic hair). Although defendant was able to avoid that level of exposure by wearing two pairs of underwear, our holding does not rely upon defendant's extra underwear, since a holding that turned on that fact "would guarantee litigation about who was looking and how much was seen." *Redding*, 557 U.S. at 374, 174 L.Ed. 2d at 364; *see Florence v. Board of Chosen Freeholders of County of Burlington*, ___ U.S. ___, ___, 182 L.Ed. 2d 566, 574 (2012) ("The term ['strip search'] is imprecise. It may refer simply to the instruction to remove clothing while an officer observes from a distance of, say, five feet or more; it may mean a visual inspection from a closer, more uncomfortable distance; it may include directing detainees to shake their heads or to run their hands through their hair to dislodge what might be hidden there; or it may involve instructions to raise arms, to

display foot insteps, to expose the back of the ears, to move or spread the buttocks or genital areas, or to cough in a squatting position. In the instant case, the term does not include any touching of unclothed areas by the inspecting officer."); *see also, U.S. v. Dorlouis*, 107 F.3d 248, 256 (4th Cir. 1997) (concluding that a search where the officers placed the defendant in a police van, removed the defendant's pants, but kept his boxer shorts on, was not an unconstitutional strip search because of the nature of the search without deciding the significance of the fact that defendant kept his boxer shorts on). The level of defendant's exposure is, nevertheless, relevant to the overall reasonableness of the search.

Although *Battle* held that a roadside strip search must be pursuant to probable cause and exigent circumstances, *id.* at 388, 688 S.E.2d at 815, courts have generally focused on whether the content of the suspicion against the defendant specifically indicated that he was hiding contraband in his underwear or near his private areas. *See Redding*, 557 U.S. at 376-77, 174 L.Ed. 2d at 365 ("In sum, what was missing from the suspected facts that pointed to Savana was any indication of danger to the students from the power of the drugs or their quantity, *and any reason to suppose that Savana was carrying pills in her underwear.*" (emphasis added)); *Battle*, 202 N.C. App. at 402, 688 S.E.2d at 824 ("Most importantly, the confidential informant provided no information that Defendant would have drugs on her person, much less hidden in her underwear."); *State v. Stone*, 362 N.C. 50, 54, 653 S.E.2d 414, 417 (2007) (describing our Supreme Court's *per curiam* opinion in *State v. Smith*, 342 N.C. 407, 407, 464 S.E.2d 45, 46 (1995) as upholding the validity of a strip search "where the officers had specific information that cocaine was hidden in the defendant's crotch."). Given this emphasis, we held in *State v. Robinson* that "the mode of analysis outlined in *Battle* [requiring exigent circumstances justifying a roadside strip search] and adopted in *Fowler* only applies in the event that the investigating officers lack a specific basis for believing that a weapon or contraband is present beneath the defendant's underclothing." *State v. Robinson*, ___ N.C. App. ___, ___, 727 S.E.2d 712, 722 (2012).

Here, even assuming that the search was indeed a "strip search," *Battle* does not apply because there was sufficient information to provide "a sufficient basis for believing that" contraband was present beneath defendant's underwear. *Id.*; *see Battle*, 202 N.C. App. at 398, 688 S.E.2d at 821 (noting that in *Redding*, the U.S. Supreme Court invalidated a strip search because " 'the content of the suspicion

failed to match the degree of intrusion.' " (quoting *Redding*, 557 U.S. at 375, 174 L.Ed. 2d at 364)). The trial court found that a drug dog had alerted in the back of defendant's car and again in the driver's seat and troopers detected the odor of marijuana on defendant's person. The troopers searched the car and defendant's outer clothing without finding the source of the marijuana odor, which was still strong. Defendant turned his body away from the searching officer when he frisked the area around defendant's groin and inner thigh, and, most significantly, Trooper Hicks felt a blunt object in defendant's crotch area during the pat-down, directly implicating defendant's undergarments.

. These circumstances are similar to those in *Robinson*, where we concluded that there was an "ample basis" for believing that contraband would be found in the defendant's undergarments when "various items of drug-related evidence were observed in the vehicle in which Defendant was riding, [] Defendant made furtive movements towards his pants, and [] Detective Tisdale felt a hard object between Defendant's buttocks." *Robinson*, ___ N.C. App. at ___, 727 S.E.2d at 722. As in *Robinson*, we conclude that the facts in the case *sub judice* provide an ample basis for believing that contraband would be found in defendant's undergarments.

[3] Having concluded that there was a specific basis for believing that contraband was present in defendant's undergarments, the next question is whether the searching officers took reasonable steps to protect defendant's privacy. *See Robinson*, ___ N.C. App. at ___, 727 S.E.2d at 723. Here, the troopers placed defendant on the side of Trooper Hicks's vehicle so that the vehicle blocked them from the travel lanes of the highway and formed a wall around defendant as he was being searched so that he could not be seen by passers-by. The troopers never actually removed or pulled down his pants and never examined any of his "private parts". Defendant was wearing two layers of clothing underneath his pants. The first layer was a pair of boxer-briefs of the type found in the passenger compartment of his car. Underneath the boxer-briefs, defendant was wearing athletic-style compression shorts with a compartment for a protective cup. The only private areas subjected to search by the troopers remained covered by defendant's compression shorts and they did not remove his pants or outer underwear to retrieve the package from his pants.

We hold that these facts, as found by the trial court, support the trial court's conclusion that "[t]he troopers took necessary and reasonable precautions to guard against any public exposure of defendant's private areas during the search of his person, and the search of

his private areas was not constitutionally intolerable in its intensity or scope." Therefore, we affirm the trial court's order denying defendant's motion to suppress the evidence seized from his person.

### III. Opinion that Scales are Drug Paraphernalia

[4] Defendant contends that under N.C. Gen. Stat. § 8C-1, Rule 701, the trial court erred in admitting, over his objection, the testimony of Trooper Hicks that the scales found in his car were of the type often used to measure drugs, "especially marijuana." Defendant argues that it was prejudicial error to admit this opinion because he had been charged with possession of drug paraphernalia.

"Defendant objected during his trial, but even if the complaining party can show that the trial court erred in its ruling, relief will not ordinarily be granted absent a showing of prejudice." *State v. Stokes*, ___ N.C. App. ___, ___, 718 S.E.2d 174, 178 (2011) (citation, quotation marks, and brackets omitted). The State did not indict defendant on the theory that the scales were drug paraphernalia, but that the wrapping used to contain the cocaine, heroin, and marijuana found in his boxers was drug paraphernalia. Even assuming that it was error for the trial court to admit the opinion evidence that the scales were of the type normally used to weigh marijuana, it is difficult to see how defendant was prejudiced, given that the item for which he *was* charged with possession of drug paraphernalia contained three types of controlled substances. Therefore, defendant's argument on this point is unavailing.

### IV. Motion to Dismiss

Defendant next argues that the trial court erred in denying his motion to dismiss the misdemeanor charges of possession of drug paraphernalia and possession of marijuana because there was insufficient evidence to reach the jury on either charge.

### A. Standard of Review

The standard of review for a motion to dismiss is well known. A defendant's motion to dismiss should be denied if there is substantial evidence of: (1) each essential element of the offense charged, and (2) of defendant's being the perpetrator of the charged offense. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. The Court must consider the evidence in the

light most favorable to the State and the State is entitled to every reasonable inference to be drawn from that evidence. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve.

*State v. Johnson*, 203 N.C. App. 718, 724, 693 S.E.2d 145, 148 (2010) (citations and quotation marks omitted).

B. Sufficiency of the Evidence of Possession of Drug Paraphernalia

**[5]** Defendant argues that there was insufficient evidence that the scales found in his car were used as drug paraphernalia and that therefore the trial court erred in denying his motion to dismiss as to that charge. As with his prior argument, defendant fails to recognize that the State indicted him for using the cellophane wrap found in his boxer shorts as a drug container, not for using the scales as drug paraphernalia. Therefore, defendant's arguments as to evidence relating to the scales are irrelevant.

N.C. Gen. Stat. § 90-113.21 defines drug paraphernalia in part as "[c]ontainers and other objects for storing or concealing controlled substances." N.C. Gen. Stat. § 90-113.21(a)(10) (2011). Defendant does not argue that the State failed to show that the cellophane wrapping of the drugs found on his person was used "for storing or concealing controlled substances." *Id.* Any arguments to that effect are, therefore, deemed abandoned. N.C.R. App. P. 28(a). We find no error in the trial court's denial of his motion to dismiss as to that charge.

C. Sufficiency of the Evidence of Possession of Marijuana

**[6]** Defendant next argues that there was insufficient evidence to support his conviction for misdemeanor possession of marijuana because there was no independent testing of the green, leafy substance found in the cellophane wrapping.

The State indicted defendant for possession of marijuana under N.C. Gen. Stat. § 90-95(a)(3).[2] To convict a defendant of Class 3 misdemeanor possession of marijuana, the State must prove (1) that the defendant knowingly possessed a controlled substance and (2) that

---

2. The indictment did not include any information as to weight, therefore, as conceded by the State at trial, the indictment charged defendant only with Class 3 misdemeanor possession of marijuana. *See State v. Partridge*, 157 N.C. App. 568, 571, 579 S.E.2d 398, 400, *disc. rev. dismissed as improvidently granted*, 357 N.C. 572, 597 S.E.2d 673 (2003); *State v. Land*, ___ N.C. App. ___, ___, 733 S.E.2d 588, 593 (2012) ("an indictment for possession of marijuana tracking the language of N.C. Gen.Stat. § 90–95(a)(3), without more, alleges only a Class 3 misdemeanor.").

the substance was marijuana. *See State v. Harris*, 361 N.C. 400, 403, 646 S.E.2d 526, 528 (2007). In this case, only the second element is contested.

Trooper Hicks testified, without objection, that within the cellophane wrapper, they found "two packages of green vegetable material that is—in my opinion and from my training is marijuana." It is well established that officers with proper training and experience may opine that a substance is marijuana. *See State v. Ferguson*, 204 N.C. App. 451, 456-57, 694 S.E.2d 470, 475-76 (2010) ("[O]ur appellate courts have never held that an officer must be tendered as an expert before identifying a particular substance as marijuana. . . . [Furthermore,] it is not necessary, in the absence of an objection, for a witness to be formally tendered or accepted as an expert in order for that witness to be allowed to present expert testimony."). Trooper Hicks had nearly 20 years of experience with the Highway Patrol, including over 300 hours of drug interdiction training and special training in the identification of controlled substances. "Though direct evidence may be entitled to much greater weight with the jury, the absence of such evidence does not render the opinion testimony insufficient to show the substance was marijuana." *State v. Fletcher*, 92 N.C. App. 50, 57, 373 S.E.2d 681, 686 (1988) (citation omitted). Trooper Hicks's testimony identifying the "green vegetable substance" introduced at trial as marijuana constitutes substantial evidence that the substance in question was, in fact, marijuana. Therefore, the trial court did not err in denying defendant's motion to dismiss as to this charge either.

## V. Possession and Transportation of Cocaine

[7] Defendant contends that the trial court erred in not arresting judgment on either possession or transportation of cocaine and heroin because punishing him for both violates the Double Jeopardy Clause, but concedes that there is case law directly contrary to his position. In *State v. Perry*, our Supreme Court held "that possessing, manufacturing, and transporting heroin are separate and distinct offenses" and that a defendant may be convicted and punished for both. *State v. Perry*, 316 N.C. 87, 103-04, 340 S.E.2d 450, 461 (1986). Even if we were so inclined, we are without power to overrule a decision of our Supreme Court. *Cannon v. Miller*, 313 N.C. 324, 324, 327 S.E.2d 888, 888 (1986). Therefore, defendant's argument on this point is meritless.

VI. Conclusion

In conclusion, we affirm the trial court's order denying defendant's motion to suppress the drugs seized from his person, find no prejudicial error in the trial court's denial of defendant's motion to exclude opinion testimony about the scales, find no error as to the trial court's denial of defendant's motions to dismiss, and no error in the trial court's imposition of judgment on both trafficking by possession and trafficking by transportation of heroin and cocaine.

ORDER AFFIRMED; NO ERROR.

Judges ELMORE and HUNTER, JR., Robert N. concur.