NO. COA13-1470

NORTH CAROLINA COURT OF APPEALS

Filed: 2 September 2014

STATE OF NORTH CAROLINA

    v.                            Guilford County
                                  No.  09CRS094505
PATRICE ANTOINETTE BERNARD,            10CRS082813, 16, 19-46
    Defendant.


    Appeal by defendant from consolidated order entered 4 April 2013, order denying motion to suppress entered 27 June 2013, and judgments entered 12 July 2013 by Judge David L. Hall in Superior Court, Guilford County.  Heard in the Court of Appeals 24 April 2014.

> *Attorney General Roy A. Cooper, III, by Assistant Attorney General Joseph L. Hyde, for the State.*
>
> *Hicks McDonald Noecker LLP, by Raymond D. Large III, for defendant-appellant.*


    STROUD, Judge.

    Defendant appeals her convictions for accessing a government computer without authority, accessing computers, and identity theft, arguing that her motions to suppress evidence seized by the North Carolina Agricultural and Technical State

University police from a search of her home should have been allowed. For the following reasons, we find no error.

I.   Background

This case has an odd and somewhat disturbing background. It began with a civil case and ended up as a criminal prosecution of defendant, who was the plaintiff in the civil case. In this criminal case, as a practical matter, North Carolina Agricultural and Technical State University ("A&T") used a criminal search warrant to obtain discovery from defendant for possible use in its defense of the civil case she had filed against A&T. Until 11 July 2008, defendant was an employee of A&T, but her employment was terminated. On 28 July 2009, in the civil action, the trial court entered an order addressing defendant's "Petition for Judicial Review of the Decision" before an administrative law judge which determined that A&T had failed to inform her of her right to contest her termination. The order found that "Petitioner [defendant] received a letter from Respondent [A&T] dated June 11, 2008 advising that her employment would be terminated July 11, 2008" and concluded that

> [t]he letter to Petitioner [defendant] dated June 11, 2008 fails to inform her of her right to contest her termination based on RIF; the procedure for contesting her

> termination, or the time limit for filing her objection to the termination. Accordingly, the notice was insufficient to start the time limit for filing her petition[.]

Accordingly, the trial court reversed the final decision of the administrative law judge, which had dismissed defendant's contested case, and remanded the case for further proceedings.

About a month and a half after the civil case was remanded, on or about 8 September 2009, "Detective M. Tillery, of North Carolina Agricultural and Technical State University Department of Police & Public Safety" applied for a search warrant for Road Runner Hold Company LLC ("Road Runner") based upon the following facts:

> On September 3, 2009 I, Detective M. Tillery, responded to 1020 Wendover Avenue, Greensboro, NC, which is property of NC A&T State University. The complainant, Mrs. Linda McAbee, Vice Chancellor of Human Resources at NC A&T SU, stated that someone accessed her NC A&T SU email account without her permission. The complainant stated that the unknown and unauthorized user(s) created an email which intended to deceive Administrators of the university.
>
> The complaint stated that the information contained in the email addressed an issue which NC A&T State University and [defendant] Mrs. Patrice A. Bernard (Petitioner) is/was in litigation in Guilford County, North Carolina. The complainant also stated that the unauthorized email was sent on August 30,

2009 at 18:49EST.

This affiant discovered through court documents that the petitioner filed a grievance in April 2008 in response to a termination letter dated April 22, 2008. According to court documents, the petitioner [defendant] received a Reduction In Force (RIF) letter indicating that her position would be eliminated for funding reasons. The petitioner filed an appeal. University Administrators have been communicating with Mrs. McAbee to resolve this issue through legal means. Mrs. McAbee stated that someone accessed her email, constructed a bogus communication, and emailed the document to University Administrators in an effort to rehire or compensate the former employee, [defendant] Mrs. Patrice Bernard.

Mrs. Lisa Lewis-Warren, Department of Information Technology with NC A&T SU stated that her department conducted forensic analysis on Mrs. McAbee's desktop computer and the campus Network System. Mrs. Warren stated that her department discovered that the unauthorized communication was not sent from Mrs. McAbee's desktop computer. Mrs. Warren stated that the NC A&T SU IT Department analysis indicated that an unauthorized person accessed Mrs. McAbee's university email account and other current employees email accounts of NC A&T SU, several times for several minutes from IP Address 65.190.107.64, between August 28, 2009 through September 2, 2009.

This affiant knows that many individuals and businesses obtain their access to the Internet through businesses known as Internet Service Providers ("ISPs"). ISPs provide their customers with access to the Internet using telephone or other telecommunications lines; provide Internet

email accounts that allow users to communicate with other Internet users by sending and receiving electronic messages through the ISPs' servers; remotely store electronic files on their customers' behalf; and may provide other services unique to each particular ISP.

Through this affiant['s] training and experience, when an ISP or other providers uses dynamic IP addresses, the ISP randomly assigns one of the available IP addresses in the range of IP addresses controlled by the ISP each time a user dials into the ISP to connect to the Internet. The customer's computer retains that IP address for the duration of that session, and the IP address cannot be assigned to another user during that period.

. . . .

Through this affiant['s] training and experience, a static IP address is an IP address that is assigned permanently to a given user or computer on a network. A customer of an ISP that assigns static IP addresses will have the same IP address every time.

Through this affiant['s] training and experience, ISPs maintain records pertaining to the individuals or companies that have [a] subscriber account with it. Those records could include identifying and billing information account access information in the form of log files, email transaction information, posting information, account application information, and other information both in computer data format and in written record format. ISPs reserve and/or maintain computer disk storage space on their computer system for the use of the Internet

service subscriber for both temporary and long-term storage of electronic communications with other parties and other types of electronic data and files. E-mail that has not been open is stored temporarily by an ISP incident to the transmission of the e-mail to the intended recipient, usually within an area known as the home directory.

Through my training and experience this affiant knows that when an individual uses a computer to obtain unauthorized access to a victim computer over the internet, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage device for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense.

Based on these facts Detective Tillery requested a search warrant to seize anything within the possession of Road Runner regarding IP Address 65.190.107.64 between the dates of August 28, 2009 and September 2, 2009. The magistrate issued the search warrant. On or about 15 September 2009, Detective Tillery applied for an amended search warrant based on the same facts and requesting the same information to be seized; again, the magistrate issued the search warrant. On or about 15 September 2009, Time Warner Cable's Subpoena Compliance Team, wrote to Detective Tillery and informed him that the IP Address at issue was assigned to defendant Patrice Bernard.

On or about 16 September 2009, Detective Tillery again applied for a search warrant but this time for defendant's home, vehicle, and her person. Detective Tillery's factual basis for the search warrant was the same as the Road Runner search warrants except he added that "[t]he ISP, Road Runner Hold Co LLC RRMA, identified IP Address 65.190.107.64 connection as being assigned to [defendant] Patrice Bernard located at 2722 Chadbury Drive Greensboro, North Carolina. This is the petitioner who is/was in litigation against NC A&T State University in Guilford County, North Carolina." The magistrate issued the search warrant. On or about 23 September 2009, Detective Tillery again applied for a search warrant based on the same facts as in the other search warrants, this time specifically requesting to search a computer seized during the search of defendant's home. The magistrate issued the search warrant. All of the search warrants except for the one regarding defendant's computer were returned by Detective Tillery.

On or about 30 September 2009, the magistrate issued a warrant for defendant's arrest for accessing a government computer; this warrant was returned by Detective Tillery. On or about 12 July 2010, the magistrate issued two other arrest

warrants for felony accessing computers and identity theft; these warrants were returned by A&T officers. On 20 September 2010, defendant was indicted for accessing a government computer without authorization, felony accessing computers, and identity theft.

On 22 February 2013, defendant filed a motion to suppress "evidence obtained as a result of any supposed forensic examination" of her computer because the information on her seized computer was manipulated. On 4 March 2013, defendant filed a supplement to her motion requesting suppression and/or exclusion of everything seized in the search of her home due to "the State's tainted chain of custody[,]" particularly evidence regarding the civil action against A&T, and requesting the charges against her be dismissed. On 27 March 2012, defendant filed another motion again requesting exclusion and suppression of the evidence seized from her home and for dismissal of her criminal case.

On 4 April 2013, the trial court entered a consolidated order regarding all three of defendant's aforementioned motions. The trial court found the following facts which are not challenged:

> 1. That on September 3rd, 2009 Detective M. Tillery responded to the Office

of the Vice Chancellor of Human Resources at North Carolina A & T State University regarding a report from Vice Chancellor Linda Mcabee who reported that someone had accessed her email and sent unauthorized e-mail transmissions from state owned computers;

2. That Vice Chancellor Linda Mcabee advised Detective Tillery that the defendant was involved in pending civil litigation with North Carolina A & T State University;

3. That Detective Tillery then independently examined court documents and learned of the nature and ongoing status of the litigation;

4. That also on or about September 3rd Lisa Lewis Warren, of the Department of Information Technology at North Carolina A & T State University, performed a forensic analysis of Vice Chancellor Linda Mcabee's computer and other computers on the campus network system;

5. That Lisa Lewis Warren discovered e-mails not sent from the campus network system computers but that had originated from IP address 65.190.107.64;

6. That on September 8th, 2009 Detective Tillery obtained a search warrant for the records of Road Runner Holding Company, LLC and did send that search warrant to Road Runner;

7. That on September 15th, 2009 Detective Tillery obtained another search warrant for Road Runner and served that search warrant on Road Runner.

8. That Detective Tillery made a return on the second search warrant dated

September 16th, 2009;

9. That Road Runner provided Detective Tillery with information that the subject IP address, 65.190.107.64, was assigned to the defendant;

10. That based upon representations made by Vice Chancellor Linda Mcabee and the subscriber information provided by Road Runner, Detective Tillery applied for and received a search warrant for the search of the defendant's home located at 2722 Chadbury Drive in Greensboro, North Carolina, on September 16th, 2009;

11. That Detective Tillery executed a search warrant on the defendant's home on September 16th, 2009;

12. That Detective Tillery was assisted during the execution of the search warrant upon the defendant's home by, without limitations, Detective J. S. Flinchum of the Greensboro Police Department, as well as Officer Kimberly Willis of the North Carolina A & T State University Campus Police;

13. That a number of computers and computer-related hardware were located and seized from defendant's home, as reflected on Detective Tillery's Inventory of Seized Property dated September 16, 2009;

14. That Detective Tillery also located a number of paper documents pertaining to the lawsuit between North Carolina A & T State University and the defendant;

15. That these paper documents included correspondence between her attorney, David W. McDonald, and the

defendant, relating to her litigation with North Carolina A & T State University;

16. That although Detective Tillery was aware of the pending lawsuit, he nonetheless reviewed these paper documents in an effort to locate evidence pertaining to his criminal investigation;

17. That after reviewing these paper documents, recognizing they pertain to pending civil litigation, Detective Tillery nonetheless seized these documents;

18. That at all times relevant to Detective Tillery reviewing and seizing these documents, Detective Tillery was acting within the scope and course of his employment with North Carolina A & T State University;

19. That Detective Tillery processed all seized property, including all computers and the above described paper documents, at North Carolina A & T State University Campus Police Headquarters;

20. That after processing all property seized from the defendant's home Detective Tillery stored all seized property in the North Carolina A & T State University Campus Police Evidence Management System;

21. That Detective Tillery checked out the computer hardware seized from the defendant's home from North Carolina A & T State University Campus Police Evidence Management System and delivered same to Detective Flinchum for purposes of a computer forensic examination on September 23rd, 2009;

22. That Detective Flinchum performed his forensic examination and returned the

computer hardware to Detective Tillery, who again entered the computer hardware into the North Carolina A & T State University Campus Police Evidence Management System;

23. That Detective Flinchum found no evidence that the computer hardware seized from defendant's home had been accessed, powered-on or manipulated in any way from the time the hardware was seized until Detective Flinchum began his forensic examination on September 23rd, 2009[.]

The trial court denied defendant's motions to suppress with the exception of exclusion of "any and all correspondence of any kind, whether electronic or in paper form, between the defendant" and her attorney in the civil case.

On or about 30 May 2013, defendant filed another motion to suppress evidence alleging A&T campus police were "acting outside the scope of their jurisdiction as prescribed by law" when they searched defendant's private residence. On 27 June 2013, the trial court denied defendant's last motion to suppress finding:

1. That on September 16, 2009, representatives of North Carolina A & T State University Campus Police obtained a search warrant for the search of the defendant's premises, located at 2722 Chadbury Drive, located in Greensboro, North Carolina;

2. That representatives of the North Carolina A & T State University Campus Police, along with a representative from the

Greensboro Police Department, executed the above-referenced search warrant on September 16, 2009;

3. That pursuant to the above-referenced search, representatives of the North Carolina A & T State University Campus Police and a detective with the Greensboro Police Department seized various computers and computer-related devices from the home of the defendant, Ms. Patrice Bernard;

4. That Ms. Bernard's property was not located on real property owned by North Carolina A & T State University;

5. That the property which was the subject of the September 16, 2009, search was occupied by defendant Patrice Bernard, and located approximately six miles from the real property owned by North Carolina A & T State University;

6. That in providing probable cause for issuance of the search warrant, Detective Tillery with the North Carolina A & T State University Campus Police articulated probable cause for a violation of North Carolina General Statute Section 14-454(b), which is commonly referred to as "Accessing a Computer Without Authorization";

7. That the physical acts necessary to commit the crime of Accessing a Computer Without Authorization in this instance would necessarily be committed not only at the site where the computer(s) was/were located, but also would be committed on the real property where the affected computer server was located;

8. That in this instance, the alleged computer server at issue was located on real

> property owned by North Carolina A & T State
> University.

The trial court denied defendant's final motion to suppress.

The jury found defendant guilty of accessing a government computer without authority (for the purpose of executing a scheme or artifice to defraud), accessing computers, and identity theft. The trial court suspended defendant's sentences on all of the convictions. Defendant appeals both the orders denying her multiple motions to suppress evidence and her judgments.

## II. Waiver

The State contends defendant has waived her issues on appeal due to her failure to provide this Court with a transcript so that we could review whether defendant preserved her arguments before the trial court. The State is correct that "[i]n order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. App. P. Rule 10(a). But here, for reasons not entirely clear to this Court, on 30 August 2013, the trial court entered an order requiring the State to provide transcripts to defendant's attorney and

ordering "AOC to pay for the transcripts."  The State did not appeal this order and thus had the responsibility, based upon the trial court's order, to pay for and provide the transcripts. Neither in the brief nor at oral argument has the State explained why it failed to comply with the trial court's order. In this unusual situation, the lack of complete transcripts before this Court is the responsibility of the State and we cannot penalize defendant for a failure to show that her arguments were preserved in the transcript. We therefore will not consider any arguments regarding waiver made by the State since the accuracy of this argument cannot be confirmed without transcripts, which the State, in violation of a trial court order, failed to provide.  In the interest of justice, we must assume that defendant presented her arguments to the trial court, and we will consider defendant's arguments.  *See* N.C.R. App. P. 2.

### III. Motions to Suppress

Defendant contends that the trial court erred in denying her motions to suppress because the search warrant was not based on sufficient probable cause; A&T campus police were without jurisdiction to execute the search warrant on private property and not on the A&T campus; and her Fourth Amendment rights were

violated.

> It is well established that the standard of review in evaluating a trial court's ruling on a motion to suppress is that the trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting. In addition, findings of fact to which defendant failed to assign error are binding on appeal. Once this Court concludes that the trial court's findings of fact are supported by the evidence, then this Court's next task is to determine whether the trial court's conclusions of law are supported by the findings. The trial court's conclusions of law are reviewed *de novo* and must be legally correct.

*State v. Johnson*, ___ N.C. App. ___, ___, 737 S.E.2d 442, 445 (2013) (citation omitted).

A.   Probable Cause

Defendant contends her motions to suppress should have been allowed because the search warrant issued for her home, person, and vehicle lacked probable cause on four grounds:  (1)  the jurisdiction of A&T campus police, (2) hearsay, (3), bias, and (4) over-breadth of the items to be seized.

> A search warrant may be issued only upon a finding of probable cause for the search. This means a reasonable ground to believe that the proposed search will reveal the presence upon the premises to be searched of the object sought and that such object will aid in the apprehension or conviction of

the offender.

In *State v. Arrington*, 311 N.C. 633, 319 S.E.2d 254 (1984), North Carolina adopted the totality of the circumstances test for examining whether information properly before the magistrate provides a sufficient basis for finding probable cause and issuing a search warrant. The standard, established by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 76 L.Ed. 2d 527, *reh'g denied*, 463 U.S. 1237, 77 L.Ed. 2d 1453 (1983), is as follows:

The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

When reviewing a magistrate's determination of probable cause, this Court must pay great deference and sustain the magistrate's determination if there existed a substantial basis for the magistrate to conclude that articles searched for were probably present.

*State v. Hunt*, 150 N.C. App. 101, 104-05, 562 S.E.2d 597, 600 (2002) (citations, quotation marks, ellipses, and brackets omitted).

We will address the issue of jurisdiction of the campus police more fully below in the section regarding jurisdiction.

Addressing defendant's other objections to the search warrant in turn, we first note that defendant's hearsay argument is without merit. "[P]robable cause may be founded upon hearsay[.]" *State v. Severn*, 130 N.C. App. 319, 322, 502 S.E.2d 882, 884 (1998) (citations and quotation marks omitted). Defendant's next objection is that Detective Tillery was biased against her. We are not aware of any case law nor has defendant directed us toward any indicating that the investigating officer's negative view or bias against a defendant may invalidate the application for the search warrant. Regardless of the investigating officer's attitude, the question remains whether the facts as presented to the magistrate establish "there is a fair probability that contraband or evidence of a crime will be found in a particular place[;]" *Hunt*, 150 N.C. App. at 105, 562 S.E.2d at 600. There was information to support the issuance of the search warrant, including a letter from Time Warner Cable to Detective Tillery which identified defendant's IP address as the source of the fraudulent emails.

Lastly, as to the items to be seized, the trial court ultimately agreed with defendant that any information regarding her civil case was beyond the scope of the criminal investigation and suppressed "any and all correspondence of any

kind, whether electronic or in paper form, between the defendant and" her attorney; thus, defendant actually received the very relief she was seeking regarding any issues of over-breadth in the search. Accordingly, we view defendant's argument "that the items sought to be seized would include items necessary to the ongoing employment litigation" to be irrelevant, in light of the fact that this evidence was suppressed. These arguments are overruled.

B. Jurisdiction of Campus Police

The more difficult question is the jurisdiction of the campus police to carry out a search of a private residence which was not on the campus of A&T. Defendant argues that her motions to suppress should have been allowed because the A&T campus police acted beyond their statutory authority by executing a search warrant at her home. "A search warrant may be executed by any law-enforcement officer acting within his territorial jurisdiction, whose investigative authority encompasses the crime or crimes involved." N.C. Gen. Stat. § 15A-247 (2009). "The territorial jurisdiction of a campus police officer shall include all property owned or leased to the institution employing the campus police officer and that portion of any public road or highway passing through such property or

immediately adjoining it, wherever located." N.C. Gen. Stat. § 116-40.5(a) (2009). Furthermore, North Carolina General Statutes §§ 74E-6, 74G-6, and 160A-288 provide campus police with the ability to cooperate with other law enforcement agencies and enter into joint agreements and mutual aid agreements that extend the campus police agencies jurisdiction. *See* N.C. Gen. Stat. §§ 74E-6(d); 74G-6(c); 160A-288 (2009). In 1998, A&T and the City of Greensboro entered into an "AGREEMENT FOR POLICE COOPERATION AND MUTUAL AID" ("Agreement") which provided that:

> The Campus Law Enforcement Agency will have primary authority for investigation as described in Paragraph 2.2, although such investigation may require that officers of the Campus Law Enforcement Agency make inquiries and arrests beyond the perimeter of Campus in the following cases:
>> An offense committed on Campus for which [the] alleged perpetrator or suspect is no longer present on campus, whether or not officers are in active and immediate pursuit[.]

Thus, the A&T campus police had authority to investigate "[a]n offense committed on Campus" even if the suspect "is no longer present on" the campus. Thus, the question is whether defendant's offense was "committed on Campus[.]" Defendant was charged with accessing computers under North Carolina General Statute § 14-454(b) and accessing a government computer without

authority under North Carolina General Statute § 14-454.1(b); both of these crimes are in Article 60 of the North Carolina General Statutes. *See* N.C. Gen. Stat. §§ 14-454; -454.1 (2009). North Carolina General Statute § 14-453.2 provides, "Any offense under this Article [60] committed by the use of electronic communication may be deemed to have been committed where the electronic communication was originally sent or where it was originally received in this State. 'Electronic communication' means the same as the term is defined in G.S. 14-196.3(a)." N.C. Gen. Stat. § 14-453.2 (2009). North Carolina General Statute § 14-196.3(a) defines "[e]lectronic communication" as "[a]ny transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature, transmitted in whole or in part by a wire, radio, computer, electromagnetic, photoelectric, or photo-optical system." N.C. Gen. Stat. § 14-196.3(a). Under this broad definition of electronic communication, *see id.*, defendant "sent" an "electronic communication" when she accessed the email account of an employee of A&T and sent a false email. N.C. Gen. Stat. § 14-453.2; *see* N.C. Gen. Stat. §§ 14-454; -454.1. Under N.C. Gen. Stat. § 14-453.2, defendants "offense[s were] committed on Campus" since she sent the email through the A&T computer servers on the campus and pursuant to the

Agreement, A&T campus police had jurisdiction to execute a search warrant at her private home. This argument is overruled.

C. Fourth Amendment

Lastly, defendant contends that her Fourth Amendment rights were violated due to Detective Tillery's egregious actions, since he knew about her pending civil litigation against his employer and quite deliberately chose to seize documents related to that case, including confidential attorney-client communications. While we agree that Detective Tillery's conduct was inappropriate and in intentional violation of defendant's attorney-client privilege, the fact remains that he had probable cause for the search warrant and due to the Agreement with the City of Greensboro, he also had the legal authority to execute the search warrant. We understand defendant's outrage that an employee of her opponent in civil litigation--and a public university of this state, no less--used his legal authority to obtain and execute a search warrant against her, with the civil litigation clearly being a primary focus of his interest. Instead of deferring to the Greensboro Police Department to handle the criminal investigation and prosecution, A&T used its authority to obtain "discovery" in the civil lawsuit which it

never would have been able to obtain in the civil case.[1] The A&T police searched defendant's home, person, and vehicle for items pertaining to both the civil case and the criminal matter, and then Detective Tillery intentionally took items which he knew were subject to attorney-client confidentiality and related only to the civil case. But the trial court properly suppressed the evidence which was subject to the attorney-client privilege, and defendant has failed to raise any legal grounds which make either the search warrant or its execution invalid. Because defendant has no legal grounds to contend her Fourth Amendment rights were violated, this argument is overruled.

## IV. Conclusion

For the foregoing reasons, we find no error.

NO ERROR.

Judges HUNTER, JR., Robert N. and DILLON concur.

---

[1] Perhaps aware of the appearance of a conflict of interest and with concern about their authority to execute the search warrants off campus, the A&T police did have one Greensboro officer accompany them for the search of defendant's home, but the Greensboro Police Department had no other involvement in obtaining or execution of the search warrant, so far as our record reveals.